JOSEPH J. DONADIO AND PETER J. DEGNAN, PLAINTIFFS-RESPONDENTS, v. JOHN R. CUNNINGHAM AND EDWARD P. O'BOYLE, BUILDING INSPECTORS OF THE TOWN OF WEST ORANGE, ZONING BOARD OF ADJUSTMENT OF THE TOWN OF WEST ORANGE, AND JAMES A. VOGEL, DEFENDANTS-RESPONDENTS, AND McDONALD'S CORPORATION, INTERVENOR-DEFENDANT-APPELLANT.

Argued December 8, 1970—Decided May 11, 1971.

310

*Mr. Thomas L. Morrissey* argued the cause for intervenor-defendant-appellant (*Messrs. Carpenter, Bennett & Morrissey,* attorneys; *Mr. Morrissey,* of counsel; *Miss Virginia D. Fenton* and *Mr. Robert E. Turtz,* on the brief.)

*Mr. Monroe Jay Lustbader* argued the cause for plaintiffs-respondents (*Messrs. Lustbader and Lustbader,* attorneys; *Mr. Monroe Jay Lustbader,* on the brief.)

No appearance made or brief filed on behalf of defendants-respondents.

The opinion of the Court was delivered by

HALL, J. This appeal devolves from a complex litigation arising out of the issuance of site plan approval and a building permit by the authorities of the Town of West Orange for the erection of a limited menu, fast service restaurant by intervenor McDonald's Corporation (McDonald) on lands leased by it from defendant Vogel in a commercial zone on Northfield Avenue in that municipality. Plaintiffs, neighboring residents, attacked the municipal action, claiming that fatal procedural irregularities vitiated the approval and permit and that a zoning ordinance provision prohibited outdoor consumption of food on the premises of a restaurant, which they asserted McDonald intended to permit, and thus pre-

cluded a valid building permit. McDonald in turn sought a declaratory judgment that the ordinance provision is unconstitutional and contended that estoppel precluded plaintiffs' attack.

The trial court sustained the issuance of the approval and permit, declared the ordinance provision unconstitutional, and also found an estoppel against the municipality and plaintiffs. On plaintiffs' appeal, the Appellate Division, in an unreported opinion, affirmed the issuance of the site plan approval and building permit, but held the ordinance provisions, including a more specific use restriction enacted subsequent to the trial court decision, to be valid though not barring the building permit, found no basis for any estoppel, and imposed a condition upon McDonald's use of the premises.

McDonald, although successful to a large degree, appealed to this court, purportedly as of right, on the ground that a substantial constitutional question is involved, R. 2:2–1(a)(1), based on the alleged invalidity of the prohibitory ordinance provisions. It goes on to urge reversal of the estoppel aspect of the Appellate Division decision. Its entire argument makes it plain that it actually seeks an adjudication in this court that will absolve it in advance of construction of any future claim of zoning ordinance violation if patrons do consume food on the premises outside the restaurant building. Plaintiffs did not cross-appeal and urge only affirmance of the Appellate Division. They did, however, file a motion to dismiss McDonald's appeal for lack of a proper constitutional question, decision on which was held pending oral argument of the appeal. Determination of the issues thus tendered demands initially a more detailed recital of the facts and chronology of events.

In May. 1968, defendant Vogel was, and had been for some time, operating an outdoor root beer stand on the premises in question. In that month he entered into a. long term ground lease with McDonald, which expressly contemplated the demolition of the existing stand and the erection by McDonald of a "carry-out restaurant," as the

lease called it, with a large parking lot. Vogel warranted "that the use of the premises as a carry-out restaurant for the sale and consumption on the premises of food and non-alcoholic beverages will be a permitted use under the zoning classification applicable to the demised premises." McDonald obviously then had in mind a type of food service installation like hundreds of others bearing its name across the country, consisting of a building containing a counter for the sale and delivery of a limited line of food and beverages in disposable containers, for consumption while standing on the premises, in cars in the parking lot or at some location entirely off the premises. No tables for service or eating are provided in this type of operation.

At this time, by virtue of two zoning ordinance amendments, both adopted earlier in 1968, West Orange prohibited "outdoor retail businesses," which were defined (in the second amendment, which superseded the first and to which reference will hereafter only be made) as

A business conducted outside of the confines of a building which shall include but not be limited to a business where the customers or patrons are served food or beverage over a counter or bar, while seated or standing outside of the confines of a building in which the business is conducted. This shall also be construed to include and prohibit businesses which are so designed or conducted by means of site design or method of packaging for customers or patrons consuming any food or beverage in motor vehicles and outdoors on the premises, whether such food or beverage is dispensed inside or outside the confines of the building.

The zoning ordinance also required site plan approval by the Planning Board prior to the issuance of a building permit. This approval dealt not with the zoning propriety of the proposed use, but rather with the physical layout and location on the site of projected structures, parking area, curbs, sidewalks, storm drainage facilities, signs, exterior lighting, fencing, landscaping and the like.

In the summer of 1968 Vogel (who apparently acted for McDonald in all matters before the local agencies) submitted a site plan based upon the type of McDonald operation pre-

viously outlined, which McDonald admits would have been banned by the quoted ordinance provision. This plan was withdrawn before action and one calling for a different kind of facility substituted. The new plan showed a larger building with provision within for tables to accommodate 60 diners, inside rest rooms and air-conditioning. The parking area showed 64 spaces for cars. The method of food service, however, still contemplated self-service at the counter in disposable containers. The Planning Board approved this site plan on September 4, 1968. Vitiating procedural irregularity was claimed by reason of an alleged improper publication of notice of the hearing thereon.

Vogel then sought a building permit from the town building department, which turned out to be a long and tortuous ordeal. He was first met with the requirement, said to be based on some general policy of the town, that he must demolish the operating root beer stand before the application would be considered. He did this, but still the permit did not issue, although he had been previously assured in writing, by defendant O'Boyle, one of the town's two building inspectors, that it would. There followed an inordinate delay, which, as the trial judge put it, "seems inexcusable in any kind of a well-managed community." The other building inspector, defendant Cunningham, had a hand along with O'Boyle, in the processing of the application. They generally worked at cross purposes, however. The Board of Adjustment, the town attorney and the Mayor were also brought into the picture at various times. The permit finally issued, over O'Boyle's signature, on April 17, 1969. The various participations of these officials in the treatment of the application formed the basis of plaintiffs' contention of invalidating procedural irregularities with respect to the permit.[1] It may

---

[1] It is unnecessary to discuss further the claimed irregularities in the issuance of either the site plan approval or the permit, since they are no longer an issue in the case, for, as we have said, the Appellate Division affirmed the trial court in this respect and plaintiffs took no cross-appeal. In any event our own review of the question satisfies us that the lower courts were quite correct in their conclusions thereon.

be noted that some of the delay was occasioned by concern on the part of certain municipal officials, based on the large number of parking spaces in relation to the number of seats within the building and on some unresponsive, if not evasive, answers by McDonald to a request for further information on the type of proposed operation, that the use would still result in the service of food for consumption in the parking area. Some of the town's officials asserted that such a result would make the entire operation a prohibited use under the 1968 zoning ordinance amendment and preclude the issuance of a building permit.

Plaintiffs, who had previously made known their opposition to the enterprise, started their suit in the Chancery Division shortly after the issuance of the permit, seeking to set aside the site plan approval and the permit and to enjoin any construction. (We pass the question, as did the trial court, that plaintiffs should first have appealed to the Board of Adjustment under *N. J. S. A.* 40:55–39(a) and, in the event of an unfavorable result there, then have brought their action in the Law Division as one in lieu of prerogative writ.) A preliminary injunction was issued restraining any action to implement the permit. The complaint sought to set aside the municipal action on the bases set forth in the first paragraph of this opinion, *viz.,* vitiating procedural irregularities and zoning ordinance prohibition of the proposed use.

McDonald was permitted to intervene in the suit and asserted not only the validity of the approval and permit, but also, by way of separate defense, that all other parties were estopped from challenging them by reason of the written assurance that a permit would issue after demolition of the root beer stand and that the 1968 zoning ordinance use prohibition did not apply to or render unlawful the proposed operation or, alternatively, that the ordinance provision was unconstitutional. Affirmatively, by way of counterclaim against plaintiffs and a cross-claim against the municipal defendants, McDonald sought a declaratory judgment in its

favor covering substantially the same assertions it had made by way of defense in its answer.

The municipal defendants took varying positions. The town and Building Inspector Cunningham urged that both the site plan approval and the building permit were void for procedural irregularities and that the zoning ordinance prohibition was constitutional and applicable. Building Inspector O'Boyle asserted that his issuance of the permit was valid and that the ordinance prohibition was constitutional but not applicable to McDonald's proposed operation. The Board of Adjustment claimed O'Boyle's issuance of the permit was lawful and proper.[2]

Following a lengthy trial, the trial judge vacated the interlocutory injunction and declared, as we have earlier indicated, that: (1) the site plan approval and building permit were not vitiated by procedural irregularities and are valid; (2) irrespective of any other considerations, plaintiffs and the town are estopped from denying the right to erect and operate a McDonald restaurant as contemplated and provided by the site plan approval and building permit by reason of Vogel's good faith reliance on the written assurance that a building permit would issue upon demolition of the existing structure; and (3) the 1968 outdoor retail business prohibition of the zoning ordinance is so broad and vague as to be beyond the legitimate exercise of the police power and is unconstitutional and void. The court commented in its oral opinion that, even if the ordinance provision forbidding the serving or consuming of food in restaurant parking lots were valid, McDonald's proposal and application did not show that such a prohibition was in fact going to be violated by the type of use projected so as to justify the denial of a building permit and that any violation after

2The Board of Adjustment was brought into the controversy because O'Boyle had consulted with it informally and had obtained its opinion — quite improperly we believe — that the proposed use would not violate the zoning ordinance so as to require a variance for the issuance of a building permit.

the business was in operation could be handled as an enforcement matter.

About the middle of January 1970, after the entry of the judgment in the Chancery Division but long before the 45 day appeal period (*R.* 2:4–1(a)) had expired, McDonald, upon notice to plaintiffs and the town, commenced construction. Plaintiffs' notice of appeal to the Appellate Division was filed February 19.[3] They also made a motion to the trial court for a stay against further implementation of the building permit pending the appeal, which, although denied on March 19, resulted in an immediate cessation of work. Only the building foundation and basement walls had been constructed.[4]

Before the appeal came on for argument in the Appellate Division, the town governing body introduced on March 17, 1970 and passed on April 7 another amendment to its zoning ordinance, prohibiting "drive-in restaurants"[5] which were defined as follows:

"Drive-in Restaurant" is a business or establishment engaged in the sale of food, soft drinks, ice cream and similar confections which are so prepared, packaged in paper or other types of disposal wrappers or containers, and served at counters either inside or outside the confines of a building, or to persons in motor vehicles, so as to be intended for immediate consumption either within or without the building or in motor vehicles while parked on the premises.

[3]The municipal defendants and defendant Vogel did not appeal and have since taken no part in the case.

[4]In the meantime, on February 17, 1970, the town governing body had adopted a new and separate ordinance "regulating the business of restaurants and drive-in restaurants," which made it penal offenses both for any such enterprise to sell or serve any food or drink for consumption outside of the enclosed premises of the restaurant or in motor vehicles while parked on the premises (except for carry-out service for the consumption of food and drink off the premises) and for any person to consume any food purchased in such a place outside the confines of the building or in motor vehicles while parked on the premises. This ordinance was not attacked in the case.

[5]The record is not clear whether the 1968 prohibition of outdoor retail businesses still remains in the ordinance. It seems obvious, however, that even if it remains, the later and more specific 1970 amendment supersedes it as to the particular use involved here.

Plaintiffs projected a new issue in the Appellate Division based on this 1970 amendment. They contended in their brief that it more clearly prohibited McDonald's proposed operation and that there had been no valid reliance upon the building permit by McDonald prior to that amendment, which would bar its application. The implication was that the appellate court should therefore declare the building permit invalid for this reason.

McDonald, in its answering brief, urged that the amendment did not affect its right to build and operate the proposed restaurant for two reasons, which in effect introduced two further issues. The first reason asserted that McDonald, by reason of the construction of the building foundation prior to the enactment of the amendment, had acquired a nonconforming use which precluded the application of the amendment to the proposed restaurant. The second was a claim that the 1970 amendment was arbitrary and unconstitutional on its face as a matter of law and it asked the court to so declare.

After oral argument, the Appellate Division inquired of McDonald whether it would be willing to post prominent signs inside the building and in the parking area stating that consumption of food in the parking area is prohibited. McDonald agreed to do so, without prejudice. The case thereby acquired another facet.

We read the Appellate Division opinion to say, as far as here pertinent:

1. The site plan approval and building permit were not vitiated by procedural irregularities and are valid. This accorded with the trial court's conclusion.

2. The 1968 zoning ordinance amendment, although ineptly drawn, is valid in prohibiting a food-dispensing business such as McDonald's "which is intended or contemplated to result in some consumption of food outside the building and on the parking area of the premises." This feature is severable from the blanket, and possibly invalid, prohibition of all businesses conducted outside the confines of a build-

ing. This conclusion reversed the contrary declaration of the trial court.

3. The more specific 1970 amendment is valid and controls the case. It does not mean to prohibit consumption of food within the confines of a building, but does forbid "a plan of operation under which the customer is given the option to decide whether he will consume the food either within or without the building (but on the premises)."

The Appellate Division cited *Morris v. Postma,* 41 *N. J.* 354 (1964), as the authority for its conclusion that the 1970 amendment (and presumably as well the 1968 amendment as construed by it) is a valid police power and land use regulation enactment. In that case this court upheld the constitutionality of a zoning ordinance provision which read:

Uses * * * shall not be interpreted to include and are hereby defined to exclude drive-in restaurants or refreshment stands, commonly called snack bars, dairy bars, hamburger stands or hot dog stands where customers and patrons are served food, soft drinks, ice cream * * * for their immediate consumption * * * outside the confines of the building or structures in which the business is conducted. * * *

The conclusion that the prohibition was within the zoning power and was not arbitrary or unreasonable was reached, not as a matter of law on its face, but on the basis of evidence that in the community there involved the business zones were severely limited in size and depth and surrounded by heavily developed residential areas and that its prior experience with such types of operation, though they are not illegal or necessarily a nuisance, led it to the warranted conclusion that they are susceptible to and had resulted in youthful rowdyism, litter and related problems affecting the public health, welfare and safety.[6]

---

[6]Plaintiffs' motion to dismiss McDonald's appeal as of right to this court for want of a "substantial" constitutional question is based on the claim that *Morris v. Postma* settled the question of the basic constitutionality of zoning provisions prohibiting the type of use here involved and that the claim of invalidity of the West Orange enactment is therefore no longer a "substantial" one.

4. No estoppel against application of the ordinance provisions arose by reason of the town's requirement that Vogel demolish his existing building as a condition of consideration of the application for a building permit, because the demand was absolutely illegal, Vogel was not in reasonable reliance in complying instead of seeking legal redress, and indeed he was overeager to comply. This conclusion was opposite to that of the trial judge. The court did not mention McDonald's claim of protection against the 1970 amendment by reason of its commencement of construction after the judgment of the Chancery Division in its favor and prior to the expiration of the time for appeal and the adoption of the amendment.

5. McDonald's willingness to post the signs suggested by the court satisfied it that "the otherwise close question whether the entire operation as projected intends or contemplates some degree of consumption of food outside the building, in the parking area, should be decided in the negative." This we gather is simply another way of saying that, at least because of such willingness, there was nothing with respect to the building permit application that would justify its denial on the ground that the proposed operation might be in violation of the zoning ordinance. This, in essence, was the point of view of the trial court, earlier adverted to, which did not, however, encompass the erection of signs.[7]

The net result in the Appellate Division was, therefore, affirmance of the trial court's approval of the building permit and declaration of the right of McDonald to proceed with construction and operation of the proposed restaurant, subject to the erection of the signs, "without prejudice to the rights and liabilities of any party or the municipality if, after the business commences operation patrons of McDonald's consume food on the parking lot," allegedly in

[7]This question of the effect of the 1970 zoning amendment on the validity of the building permit is also not strictly an issue before us since plaintiffs did not cross-appeal and urge only the affirmance of the Appellate Division decision.

violation of the 1970 zoning ordinance amendment declared valid.

Since plaintiffs do not here challenge that result, the questions before us, as we said at the outset, revolve around McDonald's efforts to secure an advance adjudication that would protect its actual operation against any future claim of zoning ordinance violation if patrons do consume food on the premises outside the building, either because such conduct is affirmatively intended and allowed or occurs despite reasonable efforts at prevention. Though it technically pegs its right to be here without a grant of certification on the claim of unconstitutionality of the ordinance provisions, its argument goes much further.

McDonald first urges, of course, that the two zoning ordinance use prohibitions are unconstitutional, for the reason that if these enactments are nullified, no land use regulation would bar outdoor consumption of food on the premises under any circumstances. It then proceeds to argue alternatively its original estoppel contention. This we conceive to be, in essence, that the requirement of demolition of the prior building, as a condition precedent to the granting of a building permit, along with O'Boyle's assurance that a permit would thereafter issue, justifiably relied upon by Vogel, entitled him to the permit immediately on demolition; the issuance would have resulted in construction at once; and such construction would have barred the applicability of the 1970 amendment (assuming its validity) adopted a year and a half later. The viability of this contention would have to initially depend on a finding that the 1968 ordinance was invalid, since it was adopted long prior to the demolition.

McDonald's final argument, also alternative, is that it gained the protection of a nonconforming use against the applicability of the 1970 provision (again assuming it to be valid) based upon its commencement of construction after the trial court judgment but before plaintiffs filed a notice of appeal or the 1970 prohibition was adopted. (As we have earlier observed, the Appellate Division did not pass upon

this point.) While recognizing the established rule that one acts at his peril in such circumstances, it offers the argument that that rule should not apply when the result of the subsequent appeal, as here, is to sustain the issuance of the permit pursuant to which it acted.

■■ In the interest of finality we think it desirable and proper that we dispose at this point of these last two arguments. We are convinced there is no merit in either. As to the first, based on the circumstances of the demolition of the root beer stand, in addition to the Appellate Division's conclusion that the demolition demand was absolutely illegal and so could not ground an estoppel against a municipality, we think no right can arise as against a subsequent prohibitory ordinance when the acts relied upon took place prior to the issuance of a building permit, at least when, as here, the permit was later validly issued. We know of no authority in this state to support McDonald's contention. In fact our cases protecting a landowner against subsequent municipal legislation, by reason of actions taken by him, rest upon acts done *after* the issuance of the permit. *E. g., Tremarco Corp. v. Garzio*, 32 *N. J.* 448 (1960). *Cf. V. F. Zahodiakin Engineering Corp. v. Zoning Board of Adjustment of Summit*, 8 *N. J.* 386 (1952); *Sun Oil Co. v. Clifton*, 16 *N. J. Super.* 265 (App. Div. 1951). The paramount public interest dictates that no equity should arise in an owner's favor and that he should have no right of reliance until the municipality has, by issuing a valid permit, officially approved the project at the first level of authority. See *Hilton Acres v. Klein*, 35 *N. J.* 570, 581–582 (1961). The viewpoint we express is the majority rule elsewhere. 2 *Rathkopf, Law of Zoning and Planning* 57–6, § 3 (1966).

■ McDonald's second argument, based on alleged rights against the subsequent 1970 zoning change claimed to be obtained by the basement construction commenced a few days after the trial court judgment in its favor, is couched in the terminology of a nonconforming use thereby acquired. What McDonald is really urging is the doctrine of *Tremarco Corp.*

*v. Garzio, supra* (32 *N. J.* 448) — that the balance of equities resulting from the initiation of construction preponderates in its favor so as to allow the project to be completed and operated as a nonconforming use despite the later ordinance prohibition. The argument would be worthy of consideration were it not for the time when construction was commenced — *i. e.* very shortly after the trial court judgment and long before the time for appeal had expired. We conceive the sound principle to be that no such overriding rights may be acquired when the acts relied upon are done prior to the end of the appeal period, so long as the rule exists that the state of legislation at the time of the decision of the case is controlling, even at the appellate level. A municipality should, in the public interest, be afforded an opportunity to amend its zoning ordinance and to take an appeal from an adverse decision. A landowner should not be able to thwart that public interest by a "bootstrap" operation and by winning an unseemly race. This should be so whether or not the issuance of the building permit is subsequently sustained in the litigation. And, of course, an owner can acquire no additional rights by starting or continuing construction after an appeal has been taken. What we have said represents the general rule, 2 *Rathkopf, Law of Zoning and Planning* 263 (Supp. 1970), as well as the holdings and rationale of our own cases. *E. g., Jantausch v. Borough of Verona,* 41 *N. J. Super.* 89, 95 (Law Div. 1956), *aff'd* 24 *N. J.* 326 (1957). The reason for the rule is particularly apparent here. Plaintiffs' and other opposition to the proposed restaurant in and out of court had been strong and McDonald could reasonably have expected some further amendment of the zoning ordinance or an appeal from the trial court judgment by either plaintiffs or the town. Its commencement of building operations can be considered as nothing more than a hasty effort to attempt to acquire an unassailable position to which it equitably should not be entitled.

There remains McDonald's contention that the Appellate Division erred in holding the 1968 and 1970 ordinance pro-

visions constitutional. We see no sound reason why that tribunal should have passed on the validity of the 1968 enactment or why we should consider it. It had been superseded by the controlling 1970 amendment, adopted after the trial court's decision. Its only possible remaining pertinency related to the estoppel claim based on the pre-permit demolition requirement, which the Appellate Division and we agree has no legal foundation, quite apart from any effect of the ordinance's prohibition.

The attack on the 1970 amendment was necessarily first made by McDonald's brief in the Appellate Division. Since there had been no trial of the issue and no remand for that purpose was sought, the challenge, if appropriate at all in that posture of the case, had to rest on the face of the enactment. Here again, we believe that the Appellate Division should not have construed or passed upon the constitutionality of the enactment and neither should we.

It may be noted that the 1970 ordinance prohibition appears broader than that imposed by the ordinance sustained in *Morris v. Postma, supra* (41 *N. J.* 354). There the use prohibition applied only to drive-in restaurants and refreshment stands "where customers and patrons are served food, soft drinks, ice cream * * * for their immediate consumption * * * outside the confines of the building or structures in which the business is conducted * * *." The connotation seems clearly that of an outdoor stand with counter type service having no inside accommodations for eating and where of necessity consumption had to take place standing or in cars on the premises (or at some location completely away from the premises). Here it can be said that the prohibition appears by its language to be broadly applicable to any business establishment having counter service of food, beverages and confections in disposable wrappers or containers "so as to be intended for immediate consumption either within or without the building or in motor vehicles while parked on the premises."

The purpose of the quoted phrase, whether it is designed to limit the inclusive nature of the businesses seemingly affected and, if so, how, are matters of some difficulty, certainly hard to resolve in the abstract. The Appellate Division read it to prohibit operations in which the purchaser is given the option to consume the food either at tables within the building or outside it but on the premises. We take it this means that it is the subjective intent of the proprietor that is involved. On this hypothesis the whole operation, including sales eaten within the building, might be said to violate the ordinance and so could be banned. But what if the proprietor makes every reasonable effort to prevent outside on-premises consumption and it still occurs? We mention these problems to illustrate the impracticability, if not the impossibility, of properly determining the validity of this ordinance provision in the absence of a concrete set of facts derived from an actual operation.

 It is clear that relief by way of a declaratory judgment should be withheld when the request is in effect an attempt to have the court adjudicate in advance the validity of a possible defense in some expected future law suit. *Rego Industries, Inc. v. American Modern Metals Corp.*, 91 *N. J. Super.* 447, 453 (App. Div. 1966). And as was said in *American Federation of Labor v. Reilly*, 113 *Colo.* 90, 155 *P.* 2d 145, 160 *A. L. R.* 873, 888 (1944):

> [I]n the very nature of things the lawmakers in passing the Uniform Declaratory Judgment Act did not intend that a court should enter into a speculative inquiry for the purpose of upholding or condemning statutory provisions, the effect of which, in concrete situations not yet developed, could not be definitely perceived.

In all the circumstances of this case, McDonald's request in the Appellate Division for an abstract declaration of unconstitutionality of the 1970 zoning amendment falls within these principles and it should not have been decided.

██ In addition, a court should not reach and determine a constitutional issue unless absolutely imperative in the

disposition of the litigation. *Ahto v. Weaver*, 39 *N. J.* 418, 428 (1963). Here the initial and principal issue of the litigation was the validity of the building permit as against claims of vitiating procedural irregularities and violation of the zoning ordinance. The projected use, as shown by the building plans and permit application, was for an indoor, sit-down, self-service restaurant which showed no ordinance violation. Whether there will be any consumption of food in the parking lot is unanswerable at this point and whether the 1970 zoning amendment would be violated if a patron did eat his purchases there instead of at the inside tables is, as we have indicated, not a necessary or foreordained result. It is thoroughly established that a building permit may not be denied simply because the ultimate actual use *might* be in violation of the ordinance so long as the application does not demonstrate such. If later the actual use does suggest a violation, the matter may then be determined and any appropriate relief ordered. *Guttman v. Borough of Bradley Beach*, 15 *N. J. Super.* 409 (App. Div. 1951) ; *The Jason Corp. v. Board of Adjustment of the City of Hoboken*, 16 *N. J. Super.* 463 (Law Div. 1951) ; 2 *Rathkopf, Law of Zoning and Planning* 55–6 (1966). This case, therefore, was properly determinable at the appellate level on this basis, as the trial court had indicated, quite apart from the Appellate Division's reliance on McDonald's willingness to put up signs and the matter of the ordinance's constitutionality; the court should have stopped there. (We should also add that we see no sound basis for the court's requirement that signs be posted as a condition of the affirmance of the validity of the building permit.)[8]

---

[8]Brief mention may also be made about another aspect of the overall situation here, which is not properly present for decision (nor was it raised in *Morris v. Postma, supra* (41 *N. J.* 354)). We refer to the abstract question whether the consumption of food and beverages on a restaurant parking lot amounts to a land "use" within the contemplation of the zoning power or whether prohibition or regulation of it is instead only possible as an exercise of the general police power granted by *N. J. S. A.* 40:48–2. See *Napierkowski v.*

Since the question of the constitutionality of the 1970 zoning amendment was not necessary to the decision of the case in the Appellate Division and since the court should not, under all the circumstances, have passed upon it, its constitutional conclusions, as well as the matter of the applicability of the enactment to McDonald's enterprise, will not be *res judicata* in any future litigation involving this use. Conversely, nothing we have said amounts to any approval of consumption of purchases on the premises outside the proposed building or of sales for such purpose if the same are in violation of any applicable lawful regulation. Consequently, it may be said that there is no substantial constitutional question present to ground an appeal to this court as of right and so plaintiffs' motion to dismiss the appeal could be granted. However, since we have found it, in effect, necessary to fully review McDonald's contentions in order to properly pass upon the motion, we prefer to rest our decision on the merits.

The judgment of the Appellate Division is modified so that it is limited to a declaration that: the site plan approval and building permit are valid; no estoppel arose by reason of the requirement to demolish the prior building;

---

*Gloucester Township*, 29 *N. J.* 481, 491 (1959) ; *Northvale v. Blundo*, 81 *N. J. Super.* 201, 203 (Cty. Ct. 1963), aff'd 85 *N. J. Super.* 56 (App. Div. 1964). If the former, all the attributes of a zoning regulation come into play, including protection of a nonconforming use (*N. J. S. A.* 40:55–48), the right to apply for a use variance (*N. J. S. A.* 40:55–39(d) ), and applicability of equitable considerations set forth in *Tremarco Corp. v. Garzio, supra* (32 *N. J.* 448). If the latter, whether adopted as part of a zoning ordinance or as a separate regulatory enactment, none of these attributes are present and the ordinance applies to the subject regulated thereby regardless of whether it was in existence prior to adoption. See, *e. g.*, *Prinz v. Paramus*, 120 *N. J. L.* 72 (Sup. Ct. 1938), aff'd o. b. 121 *N. J. L.* 585 (E. & A. 1939). Also, if the regulation is imposed by a separate enactment purportedly under the general police power and the subject matter truly relates to a "use" within the contemplation of the zoning power, there may be a question whether the municipality is not limited to regulation under the zoning power and in accordance with the adoption requirements of the zoning enabling act (*N. J. S. A.* 40:55–30 *et seq.*)

the 1970 zoning ordinance amendment controls; and Mc-Donald acquired no rights by reason of the commencement of construction prior to the passage of that enactment. No costs.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.