CHARLES H. PINSON, PLAINTIFF, v. TOWNSHIP OF BERNARDS, DEFENDANT.

Tax Court of New Jersey

May 29, 1980.

352

*Ellen M. Pinson* for plaintiff.

*Louis P. Rago* for defendant.

ANDREW, J. T. C.

The taxpayer, plaintiff, appeals from judgments of the Somerset County Board of Taxation which affirmed the original assessments as set by the assessor for the defendant, Township of Bernards for the tax year of 1978.

The two parcels of vacant woodland in question known as Block 164, Lot 10Q and Block 173 Lot 3Q were assessed at $9,000 and $10,600 respectively based on the assessor's determination that the lands were cropland harvested. At the hearing of this matter the parties agreed that the subject lots did meet all of the statutory requirements for farmland assessment pursuant to *N.J.S.A.* 54:4–23.1 et seq. including timely application. The only issue presented for consideration in this proceeding is the property value to be ascribed to the land pursuant to *N.J.S.A.* 54:4–23.7.

In a determination of value for farmland which meets the statutory criteria, the assessor may only consider those indicia of value which the land has for agricultural or horticultural use. *N.J.S.A.* 54:4–23.7. To assist him in his value determination he is required to consider the recommendations of the State Farmland Evaluation Advisory Committee. *Ibid.* These recommendations, however, are not mandated but are only guidelines which are to be considered along with the assessor's personal knowledge, judgment and experience. *Bunker Hill Cranberry Co. v. Jackson Tp.*, 144 *N.J.Super.* 230, 234, 365 *A.2d* 204 (App.Div.1976) certif. den. 73 *N.J.* 59, 372 *A.2d* 324 (1977).

Pursuant to *N.J.S.A.* 54:4–23.20 the State Farmland Evaluation Advisory Committee was created to determine and publish a range of values for each of the various classifications of land in agricultural and horticultural use in the various areas of New Jersey based upon the productive capabilities of such land when devoted to the stated uses. *N.J.S.A.* 54:4–23.20. The Committee divides farmland into four distinct classes: cropland harvested, cropland pastured, permanent pasture and woodland. *The Fifteenth Report of the State Farmland Evaluation Advisory Committee* (October 1978). The two classes which have been placed in issue in this matter are cropland harvested and woodland.

Cropland harvested is described as " . . . the heart of the farm and represents the highest use of land in agriculture. All land from which a crop was harvested in the current year

falls into this category." *Id.* at page 4. Woodland is defined as "land producing trees. Woodlands are found on all soil groups, however, a large portion of this land is not suitable for other agricultural uses due to slope, drainage, soil type or rough rocky topography and its best agricultural use is to remain in trees." *Ibid.*

The plaintiff contends that his land should be valued as woodland while the assessor felt that it was cropland harvested. The parties agreed that the issue of value could be narrowed to whether the lands in question should be assessed for farmland purposes as cropland harvested or woodland. They further agreed that the assessment is correct if the lands are in fact cropland harvested but if the lands are properly classified as woodland then the proper assessment would be:

| | | |
|---|---|---|
| Block 173, Lot 3Q | — Land | $ 700 |
| Block 164, Lot 10Q | — Land | $3,300 |

The plaintiff testified that he has owned and lived on the property since 1952. Both taxable parcels are approximately 83 acres with only 7 acres under cultivation. The remaining acreage, much of which was formerly permanent pasture, is woodland and has been so for at least the last 10 years. The plaintiff maintained that his use of the land in question has been the same since 1972, i. e., he has cleaned out and cut up dead trees for firewood and some red cedar trees have been cut and used for Christmas trees and decorations. He testified that in 1978 he cut approximately 2 cords of wood for firewood (approximately 256 cubic feet) and during the same year he cut some 40 odd cedar trees for Christmas decorations. He indicated that he received no income since these trees were given away gratuitously to the municipality of Basking Ridge. There was no cultivation of trees and the natural growth of trees had no commercial value because the wood was too soft. The plaintiff further stated that the lands in question were assessed as woodland for the period 1972 to 1976. However, he noted a change in his tax bill for 1977 and 1978. He did not question the 1977 change but did so in 1978. He was advised by the assessor that the lands had been reclassified from woodland to cropland

harvested. The assessor made this change on the basis of a decision of the Division of Tax Appeals in the matter of the *Township of Wayne v. Urban Farms, Inc.*, Docket No. L · 4838–72. In that matter, the Division Judge found that lands devoted to the commercial production of lumber pursuant to a silviculture program that called for selective thinning and planting of seedlings and which produced substantial income should be classified as cropland harvested. The Division Judge felt that the commercial production of trees was within the definition of cropland harvested i. e., "all land from which a crop was harvested."

The decision of the Division of Tax Appeals was reversed by the Appellate Division in *Urban Farms, Inc. v. Township of Wayne*, 159 *N.J.Super.* 61, 386 *A.2d* 1357 (App.Div.1978) The Court held the values to be considered by the Division of Tax Appeals in valuing land producing trees and forest products are those for woodland and not those for cropland harvested. The reversal of the decision relied upon by the assessor in ascribing a value to the lands in question leads to two appropriate issues which seek resolution. Was the assessor correct in applying the rationale of the Division of Tax Appeals opinion to the facts of the within matter and, if so, is the reversal of the Division of Tax Appeals decision as to classification to be retroactively applied to this case.

I find from the uncontradicted testimony that the lands in question were not used for the production of a harvested crop of trees for the tax year in question. Even if the Division of Tax Appeals decision had not been reversed, I do not believe that its rationale could be used to apply to the facts of the within matter. Plaintiff's minimal cutting of firewood from dead trees and the cutting of cedar trees for holiday decoration is a minimal agricultural activity which is consistent with maintaining a woodland pursuant to the classification set forth by the State Farmland Evaluation Advisory Committee. *The Fifteenth Report of the State Farmland Evaluation Advisory Committee, supra* at page 4. I do not believe that the commercial

timber activity which caused the Division Judge to find that the proper classification was cropland harvested exists in this case. It is clear that the plaintiff has not maintained a timber operation or tree farm and as such does not fit any classification but woodland under any theory.

However, this finding will not assist an assessor in making a determination in the future relative to the use of a trial court opinion during an unexpired appeal period. Chief Justice Weintraub has indicated that a Court may go beyond that which is necessary to decide a matter if there exists a need for guidance to particular parties. *Busik v. Levine*, 63 *N.J.* 351, 363, 364, 307 *A.*2d 571 (1973). This Court feels that such guidance would be appropriate in the instant matter.

Therefore, assuming arguendo, that the assessor was correct in applying the rationale of the Division of Tax Appeals opinion in *Urban Farms, Inc.*, the question which must then be answered is whether the specific reversal of the classification issue by the Appellate Division mandates a reversal of the assessor's determination.

It should be noted that the assessor stated that he was not sure that he read the Division of Tax Appeals opinion in full or a summary of the same in an assessor's publication. A review of the opinion indicated that there was a divergence of opinion within the Division of Tax Appeals as to the issue of classification of timber operations. One opinion had been rendered by a Division Judge previous to *Urban Farms, Inc.*, which held that the cropland harvested classification should obtain while another existing opinion in the Division held that a tree farm consisting of raising and selling christmas trees and firewood was to be assessed as woodland. See *Borough of North Haledon v. Urban Farms, Inc.*, Division of Tax Appeals, Docket No. L–4355–72 and *Gamble v. Township of Vernon*, Division of Tax Appeals, Docket No. L–4673–71. Both of these matters were affirmed by the Appellate Division of the Superior Court in unreported opinions. *Urban Farms, Inc. v. Borough of North Haledon*, Docket No. A–524–74; *Township of Vernon v. Gamble*, Docket No. A–2814–74.

The Courts in New Jersey have not previously considered the issue of whether an assessor or any governmental official may properly rely upon an opinion of a trial court during an appeal period involving a matter in which neither the assessor nor the present taxpayer were involved.

In *Jantausch v. Verona*, 24 *N.J.* 326, 131 *A.2d* 881 (1957) our Supreme Court held that the holder of a building permit may not rely upon the good faith issuance of a permit to begin construction during the period in which the action of the administrative officer in issuing the permit may be appealed. The Court found that persons not parties to the issuance of a building permit could challenge. the issuance of the permit during the appeal period despite the expenditure of funds in reliance upon the permit by the holder.

In *Donadio v. Cunningham*, 58 *N.J.* 309, 277 *A.2d* 375 (1971), the Supreme Court held that the plaintiff did not acquire the right to proceed with the construction of a retail food outlet based on a favorable trial court decision, as against a subsequent zoning ordinance change effected by the governing body before the requisite appeal period from the trial court's decision had expired. The Court opined at page 323, 277 *A.2d* at page 382,

"The argument would be worthy of consideration were it not for the time when construction was commenced–i. e. very shortly after the trial court judgment and long before the time for appeal had expired. We conceive the sound principle to be that no such overriding rights may be acquired when the *acts relied upon are done prior to the end of the appeal period*, so long as the rule exists that the state of legislation at the time of the decision of the case is controlling, even at the appellate level. A municipality should, in the public interest, be afforded an opportunity to amend its zoning ordinance and to take an appeal from an adverse decision. A landowner should not be able to thwart that public interest by a "bootstrap" operation and by winning an unseemly race. This should be so whether or not the issuance of the building permit is subsequently sustained in the litigation. And, of course, an owner can acquire no additional rights by starting or continuing construction after an appeal has been taken. What we have said represents the general rule, 2 *Rathkopf, Law of Zoning and Planning* 263 (Supp.1970), as well as the holdings and rationale of our own cases. E. g., *Jantausch v. Borough of Verona*, 41 *N.J.Super.* 89, 95 [124 *A.2d* 14] (Law.Div.1956) aff'd 24 *N.J.* 326 [131 *A.2d* 881] (1957). The reason for the rule is particularly apparent here. Plaintiffs' and other opposition to the proposed restaurant in and out of court had been strong and *McDonald could reasonably have expected some further amendment of the zoning ordinance or an appeal from the trial court judgment by either plaintiffs or the town*." (emphasis added)

It must be observed that the Division opinion upon which the assessor relied specifically mentioned the split within the Division as to the issue of proper classification of farmland property. The opinion recited the holding in both cases and indicated affirmance by the Appellate Division in both even though the holdings were inconsistent. Clearly, the assessor had reason to expect an appeal from the decision of the Division of Tax Appeals under these circumstances.

■ It seems evident that there was no clear or settled interpretation of "cropland harvested" or "woodland" upon which reliance could justifiably be placed at least during the period of appeal.

The assessor may have without fault assumed the Division opinion to be correct but the taxpayer should not have to pay the consequences of an erroneous interpretation. *Arrow Builders Supply Corp. v. Hudson Terrace Apts.*, 16 *N.J.* 47, 106 *A.*2d 271 (1954).

I find that a retroactive application of *Urban Farms, Inc.*, does no substantial harm or injustice to the defendant and, therefore, the subject property should be valued as woodland and not cropland harvested.

Therefore, the Clerk of the Tax Court is directed to enter judgments for the tax year of 1978 as follows:

Block 164, Lot 10Q

| | |
|---|---|
| Land | $3,300 |
| Improvements | –0– |
| Total | $3,300 |

Block 173, Lot 3Q

| | |
|---|---|
| Land | $ 700 |
| Improvements | –0– |
| Total | $ 700 |