KUSKIN, J.T.C.
The plaintiffs in each of these matters engage in floricultural operations in greenhouses located on their respective properties. For tax year 2000, the tax assessor of defendant Pequannoek Township granted farmland assessment to all of the properties, but determined the amounts of their respective assessments by using an income approach and not by using the guidelines promulgated by the New Jersey State Farmland Evaluation Advisory Committee (the “Advisory Committee”). Plaintiffs appealed their assessments. They now move for summary judgment to set aside the assessments on the grounds that the assessor failed to comply with the requirements of the applicable provisions of the Farmland Assessment Act, N.J.S.A. 54:4-23.1 to -23.23. For the reasons set forth below, I grant plaintiffs’ motions.
The remaining facts are not in dispute. The floricultural operations conducted by plaintiffs involve the growing of plants and flowers in containers which are placed on lands covered by greenhouses. Defendant’s assessor decided to value the lands by using his own income approach, and not by using the ranges of value determined by the Advisory Committee, because he determined that data relating to floricultural crops grown under glass was not considered in the study and valuation analysis performed by the Advisory Committee. The assessor concluded, therefore, that the value ranges determined by the Advisory Committee were not applicable to plaintiffs’ lands. In reaching this conclusion and in developing his income approach, the assessor did not seek guidance from an agricultural expert, the New Jersey Division of Taxation, or the Morris County Board of Taxation.
*132 In his income approach, the assessor used the gross income and expenses (other than depreciation, taxes, and bank charges) reported by plaintiffs DeGroot in their response to the assessor’s request for information served pursuant to N.J.S.A. 54:4-34, as amended by L.1979, c. 91 (thus, often referred to as Chapter 91). The assessor also deducted “[i]ncome due to business” equal to five percent of gross income, “FF & E” (presumably, furniture, fixtures and equipment) equal to ten percent of gross income, and reserves equal to the depreciation reported by the DeGroots. He capitalized the net income so determined at an overall capitalization rate of 12.54%. He then subtracted an “Improvement Value,” and attributed the remaining balance to land value. This value was $39,150 per acre, except for one tax lot, where the average per acre value was reduced because of the inclusion of woodland with the floricultural land. The applicable value range determined by the Advisory Committee was $72 to $864 per acre.
The Farmland Assessment Act provides that land satisfying the requirements for assessment under the Act is to be valued at “that value which such land has for agricultural or horticultural use.” N.J.S.A. 54:4-23.2. The valuation process is described in N.J.S.A. 54:4-23.7, which provides in its entirety as follows:
The assessor in valuing land which qualifies as land actively devoted to agricultural or horticultural use under the tests prescribed by this act, and as to which the owner thereof has made timely application for valuation, assessment and taxation hereunder for the tax year in issue, shall consider only those indicia of value which such land has for agricultural or horticultural use. In addition to use of his personal knowledge, judgment and experience as to the value of land in agricultural or horticultural use, he shall, in arriving at the value of such land, consider available evidence of agricultural and horticultural capability derived from the soil survey data at Rutgers, The State University, the National Co-operative Soil Survey, and the recommendations of value of such land as made by any county or State-wide committee which may be established to assist the assessor.
[N.J.S.A. 64:4-23.7.]
As the statutory language makes clear, the ultimate determination of the assessable value of farmland is to be made by the assessor, after considering evidence of the land’s “agricultural or horticul *133 tural capability.”[1] The data and recommendations described in the statute are not binding on the assessor. See Pinson v. Bernards Tp., 1 N.J.Tax 351, 353 (Tax 1980).
The state-wide committee established by the Farmland Assessment Act to “assist the assessor” is the Advisory Committee which was created by N.J.S.A. 54:4-23.20. The Committee consists of the Director of the Division of Taxation, the Dean of the College of Agriculture at Rutgers University and the New Jersey Secretary of Agriculture. The Committee’s function is to determine, on an annual basis, “a range of values for each of the several classifications of land in agricultural and horticultural use in the various areas of [New Jersey]. The primary objective of the committee shall be the determination of the ranges in fair value of such land based upon its productive capabilities when devoted to agricultural or horticultural uses.” N.J.S.A. 54:4-23.20. In determining ranges of value, the Committee must consider evidence of horticultural and agricultural capability from the Rutgers University soil survey, from the National Cooperative Soil Survey and from “such other evidence of value of land devoted exclusively to agricultural or horticultural uses as it may in its judgment deem pertinent.” Ibid.
In fulfilling its statutory responsibilities, the Advisory Committee established five use classes of farmland, namely, cropland harvested, cropland pastured, permanent pasture, non-appurtenant woodland, and appurtenant woodland. The Committee also established five soil groups relating to the “innate productivity of the soils.” State of New Jersey, 35th Report of State Farmland Evaluation Advisory Committee, Productivity Values for 1999 Tax Year 2 (Oct.1998) (hereinafter the “35th Report’’).[2] The methodology used by the Committee was “capitalizing net farm *134 income per acre in determining the ranges in fair value of the several classifications of qualified land.” Id. at 1. The net income used in the calculation was derived from income and expense data for New Jersey published by the United States Department of Agriculture and from data collected by the Cook College Department of Agricultural Economics and Marketing. The Advisory Committee allocated the income among the counties in the State based on data from the “Census of Agriculture 1964-1992.” The net income allocated to each county was capitalized at a ten percent capitalization rate to determine the total value of farmland in the county. The Committee then made a weighted estimate of the income potential of each use class, employing income weights developed by agricultural economists at Rutgers University. The total value of each use class was then divided by the acreage in the class to determine a base per acre value for the class. Each class was then adjusted to reflect the five levels of soil productivity, so that a range of values was established for each use class. 35th Report at 4-6. A footnote to the 35th Report states that income from “floricultural crops grown under glass” was excluded from the study because the income “doesn’t result from the land.” Id. at 11 n. 2. Expenses relating to floricultural crops under glass were also excluded. Id. at 11 n. 4.
Regulations promulgated by the Director of the Division of Taxation set forth the assessor’s responsibilities in valuing farmland. The Director recommends that the assessor use the valuation standards established by the Advisory Committee. N.J.A.C. 18:15-14.6(a). If the assessor elects not to use those valuation standards, then,
the assessor shall submit such alternate standards to the Director by November 1 of the pretax year, indicating his reasons for not following the Advisory Committee’s recommendations. The assessor shall further submit a detailed explanation as to the procedure and valuation standards to be applied in valuing qualified farmland.
[N.J.A.C. 18:15-14.6(b).]
The Director must advise the assessor and the appropriate county board of taxation by December 10 of the pretax year “as to the propriety of utilizing the alternate standard.” N.J.A.C. 18:15— 14.6(e). If the Director advises against the use of the assessor’s *135 methodology, and the assessor elects to disregard the Director’s advice, the assessor must “give written notice to the Director and the county board of taxation no later than December 31 of the pretax year.” Ibid.
The regulations are entitled to a presumption of validity. Although they are not binding on the court if they improperly interpret or extend the scope of the provisions of the applicable statute, the regulations are generally to be enforced by the court unless they are unreasonable and arbitrary. E.g., Koch v. Director, Div. of Taxation, 157 N.J. 1, 8, 722 A.2d 918 (1999). I conclude that the regulations discussed above are valid and enforceable. They represent a reasonable interpretation of the Farmland Assessment Act and do not impose requirements beyond the scope and purposes of the Act. The regulations serve an important function in promoting uniform assessment of farmland throughout New Jersey based on the statutory standard of value; that is, productive capability. The regulations are intended to discourage and deter assessors from using valuation methodologies inconsistent with the statutory standard. Because of then-function and purpose, the regulations are mandatory.
Defendant’s assessor failed to follow any of the procedures established by the regulations. Consequently, his use of a valuation approach different from that used by the Advisory Committee for tax year 2000 is invalid and warrants granting plaintiffs’ motions.
Even if defendant’s assessor had followed the procedures contained in the regulations, I would grant plaintiffs’ motions because the assessor’s valuation methodology does not establish the value of the subject properties as required by the Farmland Assessment Act. As described above, the assessor used income and expenses from plaintiffs DeGroot and (a) simply assumed that each of the Van Vugt properties would reflect the same results; and (b) made no effort or study to determine if the DeGroot information reflected market income and expenses. Consequently, the assessor’s value (assuming, without deciding, that he de *136 ducted all income not attributable to the land and deducted an appropriate amount for improvement value) simply reflects the business operating results achieved by the DeGroots. The value does not reflect the productive capability of the DeGroots’ land or the lands of the other plaintiffs. The Advisory Committee uses income information from all of New Jersey in its income approach valuation analysis. The Committee’s methodology does not necessarily establish the value of a particular piece of farmland, see Bunker Hill Cranberry Co. v. Jackson Tp., 144 N.J.Super. 230, 235, 365 A.2d 204 (App.Div.1976), but it does provide a value range, based on productive capability, generally applicable to all farmland.
No appraisal literature or decisional law has been cited to me which would justify or support the assessor’s methodology. The presumption of validity or correctness which normally attaches to an assessment does not apply if the assessment methodology is “arbitrary or unreasonable,” or if the amount of the assessment is not “reasonably related to property values that could have otherwise been reached by an application of sound assessment approaches,” and does not appear to be “a reasonable approximation of true value.” Pantasote Co. v. City of Passaic, 100 N.J. 408, 417, 495 A.2d 1308 (1985). Under these standards, the methodology employed by defendant’s assessor resulted in assessments to which the presumption does not apply for the following reasons: (1) the assessor improperly attributed income and expenses from the floricultural operation under glass of one set of plaintiffs to all other plaintiffs; (2) he failed to value any of the plaintiffs’ lands in accordance with the requirements of the Farmland Assessment Act; (3) his farmland value is a function of the market value of the crop planted and the management skills of the farmer, and not a function of the productive capability of the land; and (4) the per acre value determined by the assessor is more than forty-five times higher than the highest per acre value under the valuation methodology established by the Farmland Assessment Act and recommended by the Director of the Division of Taxation.
*137 Based on the preceding analysis, I am satisfied that no hearing is required as to the assessments in issue because the submissions of the parties demonstrate that “ ‘the evidence ... is so one sided that ... [plaintiffs] must prevail as a matter of law.’ ” Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536, 666 A.2d 146 (1995) (citation omitted).
Conclusion
I grant plaintiffs’ motions for summary judgment because: (1) in assessing plaintiffs’ properties the assessor failed to comply with mandatory requirements of regulations promulgated by the Director of the Division of Taxation, and (2) the assessor’s methodology does not use the standard of value required by the Farmland Assessment Act. For tax year 2000, therefore, plaintiffs’ properties are to be assessed in accordance with the value ranges established by the Advisory Committee. Entry of judgments will be withheld pending determination of the appropriate assessments based on those value ranges. Within thirty days, the parties shall submit agreed assessments pursuant to R. 8:9-3 or their respective proposed assessments pursuant to R. 8:9-4.

 Regulations promulgated by the Director of the New Jersey Division of Taxation incorporate the standards contained in N.J.S.A. 54:4-23.2 and -23.7. See N.J.A.C. 18:15-4.1 to-4.3.

 For tax year 2000, the year at issue in these appeals, the Advisory Committee, in its 36th Report, used the same value ranges as it determined for tax year 1999.