**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2064-17T3

MAHER TERMINALS, LLC,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

MICHAEL JAMES,

      Defendant-Appellant/
      Cross-Respondent.

_____

      Argued May 8, 2019 – Decided June 3, 2019

      Before Judges Koblitz, Currier and Mayer.

      On appeal from Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000141-16.

      Richard M. Chisholm argued the cause for appellant/ cross-respondent.

      Gino A. Zonghetti argued the cause for respondent/cross-appellant (Kaufman Dolowich & Voluck, LLP, attorneys; Gino A. Zonghetti, of counsel

and on the briefs; Iram P. Valentin and Timothy M. Ortolani, on the briefs).

PER CURIAM

Defendant Michael James appeals from a June 15, 2017 order granting reconsideration of a February 7, 2017 order. Plaintiff Maher Terminals, LLC (Maher) cross-appeals from a portion of a December 9, 2016 order denying its order to show cause (OTSC), and a November 27, 2017 order dismissing its complaint.[1] We affirm all orders challenged in the appeal and cross-appeal.

This matter arises from a dispute between the parties regarding a November 7, 2016 litigation hold letter. In that letter, James advised he was injured while operating a straddle carrier at Maher Terminals on October 14, 2016.[2] James alleged the area over which he drove the straddle carriers was

---

[1] Maher's notice of appeal and civil case information statement seek to appeal from the March 9, 2017 and June 15, 2017 orders "[t]o the extent that the June 15, 2017 Letter Decision and February 7, 2017 Opinion and March 9, 2017 Statement of Reasons may be considered binding findings and/or conclusions of law . . . ." Appeals are taken from orders or judgments and not the trial court's opinions or reasons. See Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001). Thus, we limit Maher's appeal to the portion of the December 9, 2016 order and the November 27, 2017 order.

[2] A straddle carrier is a non-road traveling vehicle commonly used in marine terminals to move and stack large freight containers. A straddle carrier stands approximately forty-eight feet above the road surface. As the name implies, the vehicle straddles the load, picking it up and carrying it by connecting to the top lifting points of the container.

uneven and rutted with potholes. The litigation hold letter demanded preservation of evidence related to the accident, including the straddle carriers used on the date of injury, and the "road conditions in the area of . . . [the] accident." Specifically, counsel for James wrote, "do not have any potholes or uneven road conditions in those areas repaired, repaved or otherwise modified until we have inspected such conditions and taken photographs."

During the month of November 2016, counsel exchanged numerous letters related to the litigation hold letter and Maher's efforts to resume full operations at its terminal. James retained an expert, who visited Maher's terminal on November 15 and 23 and took pictures of the area where James allegedly suffered his injury. However, asserting liability concerns, Maher did not allow the expert to inspect the straddle carriers or drive the carriers over the area where James claimed he was injured.

Unable to resolve the issues in the litigation hold letter, on November 30, 2016, Maher filed a verified complaint and OTSC. In its pleading, Maher sought a declaratory judgment, adjudicating its compliance with the litigation hold letter and determining that any claims James might assert against Maher were barred by the Longshore and Harbor Workers' Compensation Act (Act), 33

U.S.C. § 904.[3]  In the OTSC, Maher requested the immediate return of the straddle carriers to service and permission to repave its roadways "without the risk of the imposition of spoliation sanctions."  In addition, Maher requested a judicial determination that it "satisfied all legal obligations to James under the doctrine of spoliation[] and the New Jersey Rules of Court. . . ."

After filing the OTSC, the parties attempted to resolve their disputes. Counsel for James claimed his expert needed to test the straddle carriers by reenacting the accident.  Maher was unwilling to allow the expert to drive the straddle carriers, but offered that the expert could accompany a Maher employee while the employee operated the vehicle.

Counsel were able to narrow the disputed issues to the following: Maher's ability to repave the area where James claimed he was injured and return of the straddle carriers to service.  Eventually, counsel agreed James's expert could inspect the straddle carriers and the carriers could be returned to use after inspection.  According to the parties, the only issue to be resolved by the court was the repaving of the road surface.

---

[3] James was employed by Maher as a longshoreman.  The Act restricts personal injury claims asserted by dock and harbor workers against employers.  33 U.S.C. § 905(b).

A-2064-17T3

In opposition to Maher's OTSC, on December 6, 2016, James filed a proposed test plan to drive a straddle carrier in the area where the accident occurred. Maher responded and requested the court grant "emergency equitable relief in the form of a protective order allowing it to repair its roads" and return the straddle carriers to service. Maher advised the local asphalt company would be unable to repave the terminal's roads after December 16, 2016 because the asphalt plant closed for the winter as of that date.

On December 9, 2016, the Chancery judge heard argument on Maher's OTSC. The parties' arguments centered on the need for reenactment of the accident despite neither party filing a motion related to that issue. After the argument, counsel went off-the-record and discussed the matter with the judge in chambers. Maher claimed the repaving issue and the December 16 deadline for repaving were part of the off-the-record discussions.

When counsel and the judge returned to the courtroom and went on-the-record, the judge denied Maher's OTSC. The form order submitted to the court before the December 9 hearing was prepared by James and requested permission to allow his expert "to conduct an inspection and testing of the [straddle carriers]

A-2064-17T3

. . . ."[4] In her order, the judge denied "all relief sought by [Maher]," including the proposed language from James. On the December 9 order, the judge wrote, "[t]he application for an order to show cause is denied[.] The application shall be converted to a notice of motion to be heard [December 22, 2016]."

Prior to the December 22 motion hearing, Maher advised the judge that it repaved the terminal's road surface in the area where James suffered his injuries because the asphalt plant closed for the winter. After hearing additional arguments on December 22, the judge reserved decision.

In a February 7, 2017 order with an accompanying letter opinion, the judge ordered the following: James's expert was permitted to inspect the straddle carriers and reenact the accident; Maher was not to repair or repave the area where the accident occurred; and once the inspection of the carriers and reenactment were completed, Maher "satisfied any and all obligations Maher may have to James arising out of the . . . litigation hold imposed by James with respect to the straddle carriers, as well as any claims by James against Maher under the doctrine of spoliation of evidence." In her letter opinion, the judge

---

[4] James had not filed a motion requesting inspection or testing. The only application before the court was Maher's OTSC seeking a judicial determination that it complied with the litigation hold letter and the Act's preclusive effect on any potential personal injury claims that might be asserted by James.

6

determined James had the right to inspect the straddle carriers and reenact the accident but noted, "as a practical matter," the road had been repaved and reenacting the accident with the same road conditions as of the date of the accident was not possible.

James then filed a motion to amend the February 7, 2017 order, requesting the language in that order reflect the judge's written statement of reasons. Specifically, James sought to have the judge include in the order that reenactment could not be completed because Maher repaved the road contrary to the December 9, 2016 order. Maher opposed the motion and filed a separate motion to dissolve restraints against its use of the straddle carriers.[5]

On March 3, 2017, the Chancery judge heard argument on these motions. The judge explained her February 7, 2017 order reflected James's rights as of December 22, 2016, and Maher's repaving of the road surface prior to December 22 did not affect James's right to reenact the accident. She also explained there was no spoliation decision because the issue was not ripe for adjudication. Regarding the return of the straddle carriers, James did not object to Maher's resuming use of the carriers.

---

[5]    Maher also told the judge it intended to file a separate motion for reconsideration of the February 7 order.

On March 9, 2017, the judge issued two orders regarding the motions argued on March 3. First, she denied James's motion to amend the February 7 order because, as the judge explained, she determined James had the right to inspect the carriers and reenact the accident and there was nothing inconsistent between the language in the order and the written statement of reasons. The judge declined to make a spoliation determination, reasoning that spoliation sanctions or other sanctions, including attorney's fees, would have to be addressed by another court if a claim for spoliation was asserted in the future. The judge also dissolved the restraints imposed on Maher's use of the straddle carriers but required Maher to maintain the existing condition of the carriers except for routine maintenance.

Following the issuance of the March 9, 2017 orders, the judge heard Maher's motion for reconsideration of the February 7 order and the parties' motions for attorneys' fees. On June 15, 2017, the judge granted Maher's motion for reconsideration. She explained she "went beyond the issues presented in the pleading" when she ordered reenactment of the accident. In addition, the judge denied James's motion for attorney's fees because she concluded any fee was a sanction based on spoliation of evidence and the court could not determine a spoliation penalty because there was no pending case alleging spoliation. If

A-2064-17T3

James filed a personal injury action, the judge expressed he could assert a spoliation claim and seek sanctions. The judge also rejected Maher's motion for sanctions and attorney's fees for frivolous positions taken by counsel for James as "totally without merit."

Maher subsequently filed a motion to transfer the case from the Chancery Division to the Law Division and James filed a motion to dismiss Maher's complaint. In a November 27, 2017 order, the judge denied Maher's motion to transfer the remaining claims to the Law Division and granted James's motion to dismiss the complaint. The judge dismissed Maher's declaratory judgment action because a ruling that the Act was James's exclusive remedy against Maher would be based on hypothetical facts rather than an actual pending litigation. She also dismissed Maher's request for a determination that it had complied with the litigation hold letter, precluding the imposition of spoliation sanctions. The judge explained, "[i]f and when a lawsuit is filed which raises issues concerning [Maher's] liability for spoliation, the issue can be addressed by the [c]ourt."

Both parties appealed from various orders entered by the Chancery judge. While the appeals were pending, James filed a personal injury action in Essex County. The personal injury matter, captioned James v. Smith-Sondy Asphalt Co. and Maher Terminals, LLC, Docket No. L-6619-18, was filed on September

18, 2018 (Essex County action).  The only claim against Maher in the Essex County action alleges spoliation of evidence.  Maher sought to dismiss the Essex County action or, in the alternative, to transfer the case to Union County.  That motion was denied on February 21, 2019.

We first consider Maher's argument that the Chancery judge abused her discretion by dismissing its declaratory judgment action.  Declaratory judgments "should be granted only as a matter of judicial discretion, exercised in the public interest."  In re State Com'n of Investigation, 108 N.J. 35, 46 (1987) (quoting Proprietary Ass'n v. Bd. of Pharmacy, 16 N.J. 62, 71 (1954)).  An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso–Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)).  A motion to dismiss "should be 'approach[ed] with great caution' and should only be granted in 'the rarest of instances.'"  Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005) (alteration in original) (quoting Printing Mart–Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 771–72 (1989)).

New Jersey courts will not "function in the abstract" or render advisory opinions.  Indep. Realty Co. v. Twp. of N. Bergen, 376 N.J. Super. 295, 301

10

(App. Div. 2005) (citing <u>Crescent Park Tenants Ass'n v. Realty Equities Corp.</u>, 58 N.J. 98, 107 (1971)). Courts confine litigation to "situations where the litigant's concern with the subject matter evidenced a sufficient stake and <u>real adverseness</u>." <u>Ibid.</u> (quoting <u>Crescent Park</u>, 58 N.J. at 107). Courts decide concrete issues affecting adverse parties and do not render recommendations related to future events. <u>Ibid.</u> (citing <u>N.J. Tpk. Auth. v. Parsons</u>, 3 N.J. 235, 240 (1949)). "It is clear that relief by way of a declaratory judgment should be withheld when the request is in effect an attempt to have the court adjudicate in advance the validity of a possible [claim or] defense in some expected future law suit." <u>Id.</u> at 302 (alteration in original) (quoting <u>Donadio v. Cunningham</u>, 58 N.J. 309, 325 (1971)).

Applying these legal principles, the Chancery judge did not abuse her discretion in dismissing Maher's declaratory judgment action. James had yet to file a complaint, and a decision related to the Act's application or Maher's obligations under the litigation hold letter would have been based on hypothetical facts, rather than an actual case and controversy.

Maher also argues the Chancery judge erred in declining to decide whether it complied with the litigation hold letter and therefore did not spoliate evidence. Spoliation is the destruction or the concealment of evidence by a party "to

11

impede the ability of another party to litigate a case." Jerista v. Murray, 185 N.J. 175, 201 (2005). Depending on the circumstances, "spoliation of evidence can result in a separate tort action for fraudulent concealment, discovery sanctions, or an adverse trial inference against the party that caused the loss of evidence." Id. at 201–02.

The Chancery judge concluded spoliation would be determined by another court in the event James asserted such a claim against Maher. While the judge believed James had "good spoliation arguments," she expressly declined to rule on the issue because there was no pending case in which to determine whether Maher satisfied its obligations under the litigation hold letter or spoliated evidence.

The Chancery judge specifically dismissed Maher's declaratory judgment action without prejudice to allow the parties to assert potential claims and defenses in the future. Maher and James are able to litigate the spoliation issue in the Essex County action, and we discern nothing in the Chancery judge's orders that would prejudice the ability of the parties to litigate their issues in that action.

We next consider James's argument that the Chancery judge erred in reconsidering her February 7, 2017 order. We review reconsideration orders for

abuse of discretion.  <u>Cummings v. Bahr</u>, 295 N.J. Super. 374, 384 (App. Div. 1996).

A trial court has "the inherent power to . . .  review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment." <u>Lombardi v. Masso</u>, 207 N.J. 517, 534 (2011) (quoting <u>Johnson v. Cyklop Strapping Corp.</u>, 220 N.J. Super. 250, 257 (App. Div. 1987)); <u>see also</u> <u>R.</u> 4:42-2.  Reconsideration is proper to correct a court's error or oversight.  <u>Palombi v. Palombi</u>, 414 N.J. Super. 274, 288 (App. Div. 2010).

Here, the February 7, 2017 order stated James had the right to inspect and test the straddle carriers.  After the judge issued her February 7, 2017 order, Maher clarified that James never filed a motion to allow his expert to inspect the straddle carriers or reenact the accident.  Realizing that the right to inspect the straddle carriers and reenact the accident was not presented to the court, the judge rescinded her February 7 order.  Nothing precluded the judge from correcting a mistake in an interlocutory order.  Whether James was unable to inspect the carriers or reenact the accident because Maher allegedly spoliated evidence may be litigated in the Essex County action.

A-2064-17T3

Having reviewed the record, neither party is prejudiced by adjudicating the spoliation claim in the Essex County action. Therefore, we discern no reason to disturb the orders issued by the Chancery judge.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2064-17T3