The **EASTER SEAL SOCIETY OF NEW JERSEY, INC., and "John Does,"** Plaintiffs,

v.

**TOWNSHIP OF NORTH BERGEN, et al., Defendants.**

**Civ. No. 92–1878 (HLS).**

United States District Court, D. New Jersey.

July 22, 1992.

---

**230**

Henry G. Klein, Clifton, N.J., for plaintiffs.

Brian M. Chewcaskie, Gittleman, Muhlstock & Chewcaskie, Fort Lee, N.J., for defendants.

## OPINION

SAROKIN, District Judge.

### INTRODUCTION

The plaintiffs in this matter seek to establish and to maintain a facility in North Bergen for the developmentally disabled. Town officials and residents oppose the proposed use. They have declared their intention to prohibit it and have erected legal barriers to its opening. Confronted with a similar conflict in another case, this court wrote:

> [W]hat this matter truly needs is not judicial action, whether it be state or federal, but for the parties to search their consciences, recognize the needs and hopes of the plaintiffs and the concerns and fears of the neighbors, and arrive at an accommodation which serves and enriches all who are involved in and affected by it.

*Oxford House–Evergreen v. City of Plainfield,* 769 F.Supp. 1329, 1331 (D.N.J.1991).

The court makes that same plea for understanding and compassion in this matter as well. The need for a facility of this type and the benefits which it will confer upon its occupants must be balanced against the concerns and fears of those who will be its neighbors. However, if the parties cannot recognize and accommodate the respective rights and concerns involved, as appears to be the case here, then the Court is left with no choice but to adjudicate the issues presented.

Before the court is plaintiff's motion for a preliminary injunction, and defendant's cross-motion for summary judgment.

### BACKGROUND

Plaintiff, The Easter Seal Society of New Jersey, brings this action on behalf of itself and the yet to be identified handicapped individuals ("John Does") who are expected to live in a community residence for developmentally disabled located at 700 79th Street in North Bergen, New Jersey. The adult males expected to live in the residence all will have a primary diagnosis of a psychiatric disorder and a secondary diagnosis of substance abuse, a status sometimes referred to as a Mentally Ill Chemical Abuser (MICA). The residence would accommodate a maximum of eight individuals. Plaintiffs contend that the defendants—The Town of North Bergen, Mayor Sacco, the North Bergen Board of Commissioners, and the Construction Code Official—are discriminating against the residents on the basis of handicap in violation of the Fair Housing Act, 42 U.S.C. §§ 3601–3619, in their efforts to prevent the residence from opening. Plaintiffs ask this court to order the Town to issue a construction permit, thereby permitting the necessary renovations to the residence, and they further seek an order enjoining the Town from interfering with the operation of the residence until the conclusion of this case. Plaintiffs contend that defendants efforts threaten irreparable harm to the individuals hoping to live in the residence.

The relevant undisputed facts are as follows. In January 1989, the New Jersey Division of Mental Health and Hospitals ("DMH & H") issued a Request for Proposal for an eight person MICA residence in Passaic or Hudson counties. DeMuro Aff. ¶ 5, Pa 129. Easter Seal submitted a proposal, which includes numerous staff and continuous twenty-four hour a day supervision within the residence. Pa 273, 288. DMH & H awarded the contract to Easter Seal based on its strong proposal. DeMuro Aff. ¶ 9, Pa 130–31. (The many details of the community residence proposal generally are not relevant to the instant dispute.)

In the Fall of 1989, DMH & H and Easter Seal began contract negotiations, and Easter Seal began the site selection process, subject to DMH & H review. DeMuro Aff. ¶¶ 10–11, Pa 131. The DMH & H rejected many sites proposed by Easter Seal, but accepted the North Bergen site. The sites are selected based on the anticipated costs of purchase and renovation (DeMuro Aff. ¶ 13, Pa 131–32), and are purposefully located in "a good single family neighborhood." Regan Aff. ¶ 17, Pa 169. Easter Seal was not required to give prior notice to North Bergen officials of the facility. *See* Attorney General informal opinion dated November 7, 1991 (Pa 319). Easter Seal purchased the site, and in December 1990, DMH & H and Easter Seal entered into a Purchase of Service contract effective June 1, 1991 to June 30, 1992 (Pa 376) for an eight-person MICA community residence at the North Bergen site. The DMH & H cannot license the facility until the necessary renovations are completed. DeMuro Aff. ¶ 26, Pa 134.

However, renovations have not begun because the Town Construction Code Official refuses to issue a construction permit. The Official (defendant Scala) initially denied the permit because the plans included a small office space in the basement which he deemed to be a non-permitted use in an R–1 zone. Pa 327. Thus, Easter Seal submitted a revised plan which deleted the office. Mr. Scala then asked for information regarding the community residence, and Easter Seal complied with that request. Pa 328–29. Mr. Scala again denied Easter Seals' plan based upon his position that the "proposed use of this property is not a permitted use in this zone." Pa 330–31; Pa 436–39.

Specifically, Scala concluded that the residence was an I–1 use in an R–1 zone. Scala Cert. Exh. G. In support of his I–1 classification, Scala relied on the "Boca National Building Code," section 307.2, which provides:

> This use group shall include buildings and structures, or parts thereof, which house six or more individuals who, because of age, mental disability or other reasons, must live in a supervised environment but who are physically capable of responding to an emergency situation without personal assistance. Where accommodating persons of the above description, the following types of facilities shall be classified as I–1 facilities: board and care facilities, half-way houses, group homes, social rehabilitation facilities, alcohol and drug centers and convalescents facilities. A facility such as the above with five or less occupants shall be classified as a residential use group.

Scala Cert. Exh. I. According to Scala's Certification, New Jersey Construction Code Officials use the BOCA Code. Scala Cert. ¶ 12, citing N.J.S.A. 52:27D–119 *et seq.* However, defendants themselves cite N.J.S.A. 40:55D–66.1, which provides:

> *Community residences for the developmentally disabled and community shelters for victims of domestic violence shall be a permitted use in all residential districts of a municipality,* and the requirements therefor shall be the same as for single family dwelling units located within such districts; provided however, that, in the case of a community residence for the developmentally disabled or community shelter for victims of domestic violence housing more than six persons, excluding resident staff, a zoning ordinance may require for the use or conversion to use of a dwelling unit to such a community residence or shelter, a conditional use permit *in accordance with section 54 of the act to which this act is a supplement....* (Emphasis added.)

*See also* Department of Community Affairs Formal Technical Opinion No. 2, Guerra Aff. Exh. C (classifying community residences housing between 5 and 15 persons over 2½ years of age as R–2); Letter from New Jersey Director of Housing and Development, Guerra Aff. Exh. D (municipalities *must* classify community residences as R–2).

Plaintiff appealed Scala's denial of the Construction Permit to the North Bergen Board of Adjustment. Pa 332–34. The Board of Adjustment required Easter Seals to file application forms and to send notice

to all property owners within 200 feet of the site, notwithstanding the fact that at issue was a denial of a construction permit and not an application for development pursuant to N.J.S.A. 40:55D-3. Pa 432–45. Nonetheless, in order to have the Board hear its appeal, Easter Seal sent notice to all owners (except Mr. and Mrs. Arias, due to inadvertence), and published notice in the local newspaper. However, after carrying the hearing, the Board refused to hear the appeal based on insufficient notice. Pa 448–51. At the subsequent hearing on March 4, 1992, counsel for the Board reversed his earlier position and agreed that the appeal did not require public notice, but nevertheless urged the Board to exercise its discretion and to defer the appeal. Pa 476–77, 456. At an April 8, 1992 North Bergen Board of Zoning Adjustment meeting, Mayor Sacco stated:

> The war continues. An adjournment like this is a victory. Just like last month when they didn't get their papers in on time. Every month that we last and that doesn't proceed we're ahead. And keep looking at it that way.
>
> .    .    .    .    .    .
>
> I'm not going to stay because the attorney that you hired feels that my presence isn't good cause we're going to be in court and they could say I'm biased. Okay. They can say anything they want. If I stay here, it gives a little more weight to their argument. So at the risk of hurting this movement at all, I'm gonna step out. Everything is well under control. Pa 150–51.

Finally, at the May 13, 1992 meeting the Board dismissed Easter Seal case without comment. Pa 483–84.

Easter Seal contends that this improper treatment of its application for a construction permit and its appeal was based on illegal discrimination by the Town officials. In support of this claim, Easter Seal cites the following comments made by Mayor Sacco, including:

> [Easter Seal has] absolutely no right to come here. [I will] turn the lawyers loose [on them] to stop the project (Pa 181);

and

> [Easter Seal] are not getting any permits from this township. They will probably bring us to court, but that's okay. We will fight them in court. Pa 184.

In addition, the Winter 1992 edition of the Town Newsletter, *North Bergen Update*, reads:

> The Township is supporting the efforts of more than 300 area residents who have joined forces to stop the State of New Jersey and Easter Seal from opening a half-way house for mentally ill drug addicts at 700 79th Street.
>
> Neighbors and town officials believe it is morally wrong and have vowed to stop this half-way house from opening. Pa 186.

Plaintiffs also cite the Town's involvement in fueling community opposition to the residence, such as providing senior citizen buses to transport residents to the Zoning Board hearing. Fiume Aff. ¶ 15, Pa 150.

Moreover, twenty days after Easter Seals' last appearance before the Zoning Board, the North Bergen Board of Commissioners held a special meeting and adopted a new ordinance entitled: "An Ordinance Amending and Supplementing an Ordinance entitled 'Zoning Ordinance of the Township of North Bergen, in the County of Hudson' by amending Article VI thereof, conditional uses, to establish as a conditional use community residences for the developmentally disabled." Pa 218. This ordinance provides for additional (and plaintiff contends, onerous) requirements for a community residence to obtain a conditional use permit. For instance, it requires special fencing which allows visibility of entries and exits of the facility, as well as insurance coverage of $1 million "per incident" which "specifically provide[s] that the mental state of the facility resident who was injured or who perpetrated an act shall not be used as a defense against recovery on a policy." Pa 220–21. The Ordinance also provides that the Town Construction Code Enforcement Office and/or Planning Board ultimately judge whether

the proposed medical and supervisory staff are necessary or adequate. Pa 219a. Plaintiffs contend that this provision, in particular, places unfettered discretion in the hands of Town officials without any expertise in this sensitive area.

Based on these relevant events, the plaintiffs conclude: "The Township of North Bergen has openly, flagrantly and illegally opposed the community residence. North Bergen officials have capitulated to the blind, irrational and stereotypical view of the handicapped held by their residents." Plt. Brief at 21. They argue that the Town's actions which have stalled opening of the residence are causing plaintiffs, especially the prospective residents, irreparable injury given the high risk of relapse arising from the disruption of their course of treatment.

DISCUSSION

■ The Fair Housing Act, 42 U.S.C. § 3613(c)(1), authorizes this court to grant a preliminary injunction when plaintiff's request satisfies the following circumstances:

(1) Plaintiff is likely to succeed on the merits;

(2) Plaintiff is subject to irreparable harm while the litigation is pending;

(3) Defendant will not suffer substantial harm as the result of the requested injunctive relief; and

(4) The requested relief is in the public interest.

*Sullivan v. City of Pittsburgh*, 811 F.2d 171, 181 (3d Cir.1987), *cert. denied*, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104. Plaintiffs contend that they are entitled to their requested relief based on all four of these factors.

*1. Plaintiffs Are Likely to Succeed on the Merits*

Plaintiffs have filed claims pursuant to two separate provisions of the Fair Housing Act, which provide:

[I]t shall be unlawful—

.        .        .        .        .

[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

(A) that buyer or renter;

(B) a person residing or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that buyer or renter.

42 U.S.C. § 3604(f)(1); and

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. Under the Act, "handicap" is defined as:

(1) a physical or mental impairment which substantially limits one or more of such person's major life activities; or

(2) a record of having such impairment; or

(3) being regarded as having such impairment, but such term does not include current, illegal use of or addiction to a controlled substance....

42 U.S.C. § 3602(h).

■ The Prospective residents of the site at issue in this case are *not current* chemical abusers, but they *do* have other mental impairments. Thus, they are protected persons under this statutory scheme. As explained in the legislative history:

[I]ndividuals who have a record of drug use or addiction but who are not currently using illegal drugs will continue to be protected if they fell [sic] under the definition of handicap.... [F]ormer drug-dependent persons do not pose a threat to a dwelling or its inhabitants simply on the basis of status. Depriving such individuals of housing, or evicting them, would constitute irrational discrimination that may seriously jeopardize their continued recovery.

House Committee on the Judiciary Report, H.R.Rep. 771, 100th Cong., 2d Sess. 22 (1988), Pa 3. *See also* 24 C.F.R. § 100.-201(a)(2) (1989) ("physical or mental impairment" includes past drug addiction); Plt.

Brief at 28–29 (citing case law to same effect).

Plaintiffs argue that the Town defendants have been and are unlawfully discriminating against them. The statute defines "discrimination" as including "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such [handicapped individuals] equal opportunity to use and enjoy a dwelling...." 42 U.S.C. § 3604(f)(3)(B). Plaintiffs argue that the "reasonable accommodation" obligation applies to R–1 zoning regulation on which the Town bases its denial of Easter Seals' requested construction permit. Plaintiffs contend that although the prospective residents are not related to each other, they will use the premises in much the same way as would a traditional family, and thus, minimal "accommodation" is required. As plaintiffs point out, the proposed community residence deserves an R–2 classification, not the I–1 classification determined by defendant Scala.

Courts have broadly interpreted the Act's clear prohibition of "all practices which [make unavailable or deny] a dwelling on prohibited grounds," including land use restrictions. See Devereux Foundation, Inc. v. O'Donnell, 1990 WL 132406 at *9, n. 12 and n. 13, 1990 U.S.Dist.Lexis 11831 at 13, n. 12 and n. 13 (E.D.Pa.1990) (holding section 3604(f)(3)(B) applicable to zoning variance determinations); A.F.A.P.S. v. Regulation and Permits Admin., 740 F.Supp. 95, 107 (D.P.R.1990); Plt. Brief at 31–33. Indeed, the legislative history states:

The Committee intends that the prohibition against discrimination against those with handicaps apply to zoning decisions and practices. The Act is intended to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community....

House Rep. No. 100–711, 100th Cong., at 24, reprinted in 1988 U.S.Code Cong. & Admin.News 2173, 2185 (1988).

█ Under the statute, plaintiffs can prove discrimination either by proving discriminatory intent or a disparate impact on the statutorily protected class. See Resident Advisory Board v. Rizzo, 564 F.2d 126, 146–48 (3d Cir.1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978); Oxford House–Evergreen v. City of Plainfield, 769 F.Supp. 1329, 1343–44 (D.N.J.1991).

In this case, based on the preliminary evidence which plaintiffs have adduced, the court concludes that plaintiffs have a substantial likelihood of success on the merits of their discrimination claim. The extraordinarily explicit statements by Town officials, the unfair treatment by the zoning board, and defendant Scala's inexplicable classification of the residence as an I–1 use all strongly suggest official open and explicit discrimination against plaintiffs based on their handicapped status. Mayor Sacco's comments, quoted supra, are particularly relevant, such as his public assurances at the Board of Adjustment meeting that he would not do anything to show his bias and thereby jeopardize the opposition movement, and his further assertion that "[e]verything is under control."[1] The possibility of defendants' intentional discrimination is further borne out by the circumstances under which the Board amended the applicable zoning variance standards, an Ordinance which burdens community

---

1. Defendants contend that the court should ignore the statements attributed to the Mayor, among others, because these "political" statements are hearsay. However, these statements are revealing admissions of possible intentional discrimination. The fact that they are "political" only supports plaintiffs' allegations that Town officials intentionally fueled the fire of community opposition to the proposed residence. See United States v. Yonkers Bd. of Ed., 837 F.2d 1181, 1223–24 (2d Cir.1987), cert. denied, 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988); United States v. Borough of Audubon, 797 F.Supp. 353, 361 (D.N.J.1991) (Gerry, C.J.), aff'd, 968 F.2d 14 (3d Cir.1992) (Exhibits Attached to Plt. Reply Brief) ("Discriminatory intent may be established where animus towards a protected group is a significant factor in the community opposition to which the commissioners are responding").

residence homes for handicapped persons with onerous requirements. The court specifically concludes that plaintiffs have demonstrated a strong likelihood of success on the merits of their discrimination claims.

In opposition to plaintiffs' application, and in support of their cross-motion for summary judgment, defendants make several arguments which seek to undercut plaintiffs' claims on the merits. Defendants contend that this "is a zoning case." Def. Brief at 1. Generally, defendants suggest that the newly amended Ordinance, which redefines community residences for the developmentally disabled as conditional uses, is the essential starting point of this litigation in the sense that plaintiffs must attempt to comply with this Ordinance in order to challenge it. However, plaintiffs' Fair Housing Act discrimination claim arises in the context of and as a result of a series of Town efforts to prevent plaintiffs from opening their community residence, a series of events in which the Ordinance comes as a final salvo. Indeed, given the history of the Town's efforts with respect to this project, passage of the Ordinance only adds further support to plaintiffs' already strong claim that the Town defendants are discriminating against plaintiffs on the basis of a handicap, in violation of the Fair Housing Act.

■ The court will address each of defendants' arguments, all of which, the court concludes, are without merit. First, defendants argue that there is no justiciable controversy here because "Easter Seal has never submitted its zoning proposal to any municipal administrative body for the purpose of a hearing on the merits." Def. Brief at 6. However, rather than cite to any precedent which supports defendants' contention that plaintiffs must submit a conditional use application prior to bringing this suit, defendants merely point out that plaintiffs' Fair Housing Act citations often occurred in a post-application context.

As plaintiffs convincingly demonstrate in their Reply Brief, the Fair Housing Act redresses many types of discrimination, including the "refusal to make reasonable accommodations in rules, policies, practices or services." 42 U.S.C. § 3604(f)(3)(B). Indeed, it was on this basis that in *Ardmore, Inc. v. City of Akron*, 90–CV–1083, slip op., 1990 WL 385236 (E.D.Ohio Aug. 2, 1990) (Pa 9), the court issued a preliminary injunction where the plaintiffs had withdrawn their application for a conditional use permit prior to a hearing. As the *Ardmore* court reasoned, plaintiffs need only show a "likelihood that the City's ordinance will be found violative of rights so protected [by the Act]." *Id.* at 11.

Plaintiffs allege that the Ordinance has a discriminatory impact, which is akin to a "facial" challenge (*see* Plt. Reply Brief at 7); plaintiffs can prevail on the basis of a showing that the Ordinance has a greater adverse impact on a protected group than on others, and that it perpetuates an existing pattern of segregation in the community. *See Oxford House–Evergreen*, 769 F.Supp. at 1344, citing *Metropolitan Housing Dev. Corp. v. Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978). Thus, plaintiffs present the court with a justiciable controversy regarding the Ordinance.

In addition, with respect to plaintiffs' intentional discrimination claim, defendants ignore the fact that plaintiffs have submitted their application and appeal of the building permit to the public process. It is plaintiffs' contention that the Town's actions as they pertain to that process establish the basis for their discrimination claim. Moreover, as described *supra*, the circumstances surrounding passage of the Ordinance only further support plaintiffs' intentional discrimination claim.

■ Finally, the court specifically concludes that plaintiffs have established that they currently suffer harm as a result of defendants' allegedly illegal actions. The Town attorney has indicated that the Ordinance will be enforced against Easter Seal (Pa 199), and thus, Easter Seal relies on *Neiderhiser v. Borough of Berwick*, 840 F.2d 213 (3d Cir.1988), *cert. denied*, 488 U.S. 822, 109 S.Ct. 67, 102 L.Ed.2d 44 (1988), for the proposition that Easter Seal presents a justiciable controversy due to

the imminent application of an allegedly onerous Ordinance. In addition, as plaintiffs point out, the alleged discrimination in violation of the Fair Housing Act is presumed to be irreparable harm. *Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423–24 (11th Cir.1984), *cert. denied,* 469 U.S. 882, 105 S.Ct. 249, 83 L.Ed.2d 187 (1984). Finally, and most importantly, this court specifically concludes that the prospective tenants of the community residence currently suffer and will imminently suffer irreparable harm given the delay of their treatment as a result of defendants' actions. *See infra* part 3. This case clearly presents a justiciable case and controversy.

■ Next, defendants contend that Easter Seals' motion for a preliminary injunction must be denied and the Complaint dismissed because Easter Seal has failed to exhaust administrative remedies. Specifically, defendants argue that Easter Seal is obliged to pursue two separate appeals: (1) "a zoning issue" to the North Bergen Zoning Board of Adjustment pursuant to N.J.S.A. 40:55D–1 *et seq.;* and (2) the construction permit from the Board of Adjustment to the Hudson County Construction Board of Appeals pursuant to N.J.S.A. 52:27D–127 b. *See* Def. Brief at 9–13. It is not clear what the "zoning issue" is which defendants expect plaintiffs to appeal. (If it is the validity of the amended Ordinance, the court has already rejected defendants' argument that plaintiffs must first present the Zoning Board with their challenge to the Ordinance.) In any event, defendants themselves concede that any exhaustion requirement—were one to exist—is exempted "if the prescribed administrative procedure is clearly shown to be inadequate to prevent irreparable injury, or when there is a clear and unambiguous statutory violation[.]" Def. Brief at 10, citing *American Fed. of Gov't Emp. v. Resor,* 442 F.2d 993, 995 (3d Cir.1971). As discussed throughout this opinion, that is exactly the case here. Plaintiffs currently suffer irreparable injury each day that their treatment is delayed, and plaintiffs have a strong likelihood of success on their discrimination claims. Any further efforts

by plaintiffs to work within the municipal administrative apparatus would be an exercise in futility. *See Doe v. Butler,* 892 F.2d 315, 322 (3d Cir.1989). Accordingly, the court rejects defendants' exhaustion argument.

■ Third, defendants argue that the Amendment to the Zoning Ordinance is accorded a presumption of validity. Essentially, defendants argue that the terms provided for within the amended ordinance can only be invalid if they are arbitrary, unreasonable, or bear no rational relationship to a permissible state objective. Def. Brief at 15, citing *Lusardi v. Curtis Point,* 86 N.J. 217, 226, 430 A.2d 881 (1981) and *State v. C.I.B. International,* 83 N.J. 262, 274 (1980). Defendants then conclusorily state: "[N]o evidence has been submitted that same has a 'discriminatory effect.'" Def. Brief at 18.

To the contrary, as described *supra,* plaintiffs have presented a strong case in support of their discriminatory impact claim, and the circumstances surrounding passage of the Amended Ordinance suggest intentional discrimination on the part of the Town officials and agencies involved. *See Oxford House–Evergreen,* 769 F.Supp. at 1343 ("Given the sequence of events in this case, the declared motives suggest possible operation of a pretext for discrimination"). Under these circumstances, a general "presumption of validity" does not undermine or overcome plaintiffs' strong likelihood of success on the merits.

Next, defendants argue that plaintiffs are precluded from recovery in this case because the residence has not yet been licensed by the DMH & H and thus, the proposed community residence does not satisfy the criteria for a community residence for the developmentally disabled. *See* N.J.S.A. 40:55D–66.2(a); *Piscataway Tp. v. Concerned Citizens for C.P.A.,* 200 N.J.Super. 615, 619, 491 A.2d 1333 (App. Div.1985) (community residence facility requires licensure). this argument is ludicrous. Obviously the plaintiffs cannot complete licensing of the facility if defendants refuse to issue the necessary con-

struction permits. The Fair Housing Act clearly prohibits any discrimination against or interference with individuals who *"intend"* to establish an otherwise proper community residence. *See* 42 U.S.C. § 3604(f)(1)(B).

Defendants next argue that plaintiffs only suffer future harm, thereby reiterating their initial argument that this case is not justiciable or ripe. Def. Brief at 21–26. The court has already rejected this argument, especially in light of the clear irreparable injury which the prospective residents suffer in the delay of their treatment. *See* part 3, *infra.*

Finally, defendants contend that the Complaint must be dismissed because plaintiffs have failed to join the State of New Jersey as an indispensable party pursuant to Fed.R.Civ.P. 19. Defendants contend that New Jersey is an indispensable party because plaintiffs' challenge to the Amended Ordinance also challenges the state authorizing statutes which allow municipalities to implement zoning regulations. Again, this argument is entirely ludicrous; plaintiffs challenge the local zoning amended Ordinance, not the Town's general right to design zoning regulations consistent with other applicable law.

In sum, defendants have not presented any arguments which rebut plaintiffs' strong likelihood of success on the merits of their discrimination claims. Indeed, the obvious deficiencies of many of defendants' arguments only reinforce plaintiffs' contention—as well as defendants' own admission—that the defendants will erect any barrier in order to stall or stop this community residency project.

### 2. *Plaintiff is Exposed to Irreparable Harm*

Plaintiffs rely on the affidavit of Riley Regan, the New Jersey Executive Director of the Governor's Council on Alcoholism and Drug Abuse, in which Mr. Regan attests to the fact that half-way houses such as plaintiffs' proposed community residence are essential to guard against the relapse of the resident recovering chemical abusers. Pa 165 *et seq.*

Many cases within this Circuit, have acknowledged and accepted the now well-recognized reality that placement in community residences such as the one at issue in this case is integral to the prospective residents' continuing treatment and recovery. In *Sullivan v. City of Pittsburgh,* 811 F.2d 171, 179 (3d Cir.1987), *cert. denied,* 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 the Third Circuit found irreparable harm justifying preliminary injunctive relief where recovering alcoholics challenged Pittsburgh's zoning-based closing of alcoholism treatment facilities. The court reasoned:

> [Plaintiffs] are primarily recovering alcoholics who are in a critical state of their recovery. [ ] Without proper care, supervision and peer support each could easily suffer a relapse. For these alcoholics, a relapse threatens not only a potentially irremediable reversion to chronic alcohol abuse but immediate physical harm or death.

811 F.2d at 179. Similarly, this court previously has had occasion to conclude that interference with the establishment of a functioning community residence for recovering chemical abusers threatens those individuals with the irreparable harm of a relapse. *Oxford House–Evergreen,* 769 F.Supp. at 1339–40, 1345.

Although plaintiffs have yet to identify the "John Does" who will live in the prospective residence, there is no doubt that for each day that this project is delayed, eight protected individuals are forced to move into other environments which endanger their recent recovery. This threatened harm is truly irreparable, jeopardizing the health and safety of those individuals. Given this realty, as recognized by prior case law, the court finds that plaintiffs have demonstrated a likelihood of irreparable harm should the court deny the requested relief.

In addition, plaintiffs argue that the court may presume irreparable harm upon a finding of intentional discrimination in violation of the Fair Housing Act. Plt. Reply Brief at 7–8, relying on *Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417,

1423–24 (11th Cir.1984), *cert. denied,* 469 U.S. 882, 105 S.Ct. 249, 83 L.Ed.2d 187. In *Oxford House–Evergreen,* this court declined to reach the question raised in *Gresham,* i.e., whether a strong likelihood of success on a Fair Housing Act discrimination claim justifies a presumption of irreparable injury which flows from that discrimination. Again, this court need only observe that the likelihood of irreparable injury to the prospective residents is so strong that the court need not reach *Gresham's* alternative basis for a finding of threatened irreparable harm.

### 3. Defendants Will Not Suffer Substantial Harm

Granting plaintiffs their requested preliminary relief—an injunction ordering defendants to issue plaintiffs a construction permit, and enjoining all unlawful interference with plaintiffs efforts and failure to make reasonable accommodations as required by statute—will not cause defendants to suffer any substantial harm. To the contrary, as noted in *Oxford House–Evergreen,* opening the proposed community residence will ultimately save taxpayer money. 769 F.Supp. at 1345.

Defendants' only basis for arguing that the Town will suffer is their contention that "Township officials must cower from an alleged threat of discrimination when it seeks to enforce its laws in a uniform manner." Def. Brief at 31. However, given the evidence cited above, there is every indication that defendants did discriminate and did *not* apply their laws in a uniform manner. The preliminary injunctive relief will not resolve these issues until this case is concluded, but it will preserve the controversy without requiring plaintiffs to suffer any further irreparable harm.

### 4. The Requested Relief Is In the Public Interest

Finally, the court concludes that plaintiffs' requested relief serves the public interest reflected in N.J.S.A. 26:2BB–1, which provides:

Alcoholism and drug abuse are major health problems facing the residents of this State. [T]he Legislature further finds and declares that[ ] as the cooperative and active participation of all communities in the State is necessary to achieve the goal of reducing alcoholism and drug abuse ... and that the full resources of this State including counties, municipalities, and residents of the State must be mobilized and persist in a sustained manner to achieve a response capable of meaningfully addressing not only the symptoms but the root cause of this pervasive problem.

Based on the Regan Affidavit, which describes the central role of community residences in the continuing treatment of recovering chemical abusers, the court concludes that the requested relief serves the public interest, whereas its denial would frustrate those goals.

## CONCLUSION

The court is not unmindful of the concerns and fears that such a community residence poses to its neighbors, but what the Mayor views as a "victory" (Pa 150) is in reality a defeat for compassion and understanding, and only a victory for discrimination and despair.

For the foregoing reasons, the court grants plaintiffs' application for preliminary injunctive relief, and denies defendants' cross-motion for summary judgment. The court will issue the requested injunction ordering defendants to issue plaintiffs a construction permit, and enjoining all unlawful interference with plaintiffs efforts and failure to make reasonable accommodations as required by statute.