288 N.J. Super. 197 (1996)
672 A.2d 199
IN THE MATTER OF THE COMMITMENT OF J.W.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1995.
Decided March 6, 1996.
*198 Before Judges LONG, BROCHIN and LOFTUS.
James Katz argued the cause for appellant J.W. (Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, on behalf of the American Civil Liberties Union of New Jersey, attorneys; Mr. Katz, on the brief).
*199 Judith A. Nason, Deputy Attorney General, argued the cause for respondent New Jersey Division of Mental Health Services (Deborah T. Poritz, Attorney General of New Jersey, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Nason, on the brief).
William R. Bostic, Camden County Adjuster, filed a statement in lieu of brief.
The opinion of the court was delivered by BROCHIN, J.A.D.
J.W. is a patient at Ancora Psychiatric Hospital. He was involuntarily committed to that institution on January 27, 1995. At a placement review hearing conducted June 26, 1995, the Ancora staff sought authorization from the Law Division to release him for placement, subject to continuing supervision, in a community residence or a group home operated by CamCare, a Camden County community health center. Without reaching the question of whether J.W. would be potentially dangerous to himself or to others if he was conditionally released for residence in the home, the court entered an order which "denies the request to authorize patient's proposed placement in community residence, finding said placement prohibited by N.J.S.A. 30:11B-2 and N.J.S.A. 40:55D-66.2."
N.J.S.A. 30:11B-2, the first of the two statutes relied on by the Law Division, is part of "An Act Concerning Community Residences for Developmentally Disabled Persons and for Mentally Ill Persons," N.J.S.A. 30:11B-1 et seq. The Act defines "community residence for the mentally ill" as "any community residential facility which provides food, shelter and personal guidance, under such supervision as required, to not more than 15 mentally ill persons who require assistance temporarily or permanently, in order to live independently in the community." N.J.S.A. 30:11B-2. The maintenance of such a facility is subject to approval by the Division of Mental Health and Hospitals in the Department of *200 Human Services. Ibid. The purpose of community residences for the mentally ill is described as follows:
The Legislature ... finds that there are many persons who have been hospitalized due to mental illness and are recovered to the extent that they no longer require such hospitalization, but would benefit from the specialized independent-living training available to residents of small community residences for the mentally ill. These community residences for the mentally ill may also be utilized by persons who have not been hospitalized for mental illness but who are participating in community mental health counseling or training programs provided by a State-affiliated community mental health agency. These persons have a right to a fuller, more normal life that care in community residences brings, and it is, therefore, the intention of the Legislature through this act, to encourage the development of community residences for the mentally ill and to provide for the licensing and regulation of the residences by the Department of Human Services.
[N.J.S.A. 30:11B-1].
The provision of N.J.S.A. 30:11B-2 on which the Law Division based its ruling states:
These residences shall not house persons who have been assigned to a State psychiatric hospital after having been found not guilty by reason of insanity or unfit to be tried on a criminal charge.
N.J.S.A. 40:55D-66.1, the second statute on which the Law Division relied for its ruling in this matter, is an amendment to the New Jersey Municipal Land Use Law. It provides that "community residences for the developmentally disabled ... shall be a permitted use in all residential districts of a municipality," subject only to limited exceptions and to a requirement for a conditional use permit reasonably related to the health, safety and welfare of residents of the district for a facility housing more than six residents in addition to staff. The statute defines "community residence for the developmentally disabled" to include facilities housing "mentally ill persons." However, the statute excludes from the definition of "mental ill person," "a person who has been committed after having been found not guilty of a criminal offense by reason of insanity or having been found unfit to be tried on a criminal charge." N.J.S.A. 40:55D-66.2.
CamCare, where the Ancora staff wanted to place J.W., is a community residence within the meaning of these statutes. The Law Division judge to whom Ancora submitted its application for *201 J.W.'s placement interpreted the quoted provisions to mean that once an accused has been found incompetent to stand trial on a criminal charge or found not guilty of such a charge by reason of insanity, he or she will be forever ineligible to live in a community residence which is subject to N.J.S.A. 30:11B-2 or N.J.S.A. 40:55D-66.2. Consistently with that interpretation, the court ruled that J.W. is ineligible for residence in CamCare because he was charged with a sexual offense in 1981, found not guilty by reason of insanity and, because of that finding, committed to Ancora as criminally insane.[1]See State v. Krol, 68 N.J. 236, 344 A.2d 289 (1975).
J.W. has appealed. He contends that the statutory provisions which, without qualification, deny eligibility for residence in a group home to any person who has ever been adjudged incompetent to stand trial or not guilty by reason of insanity are invalid. He argues that they violate the Fair Housing Amendments Act of 1988, 42 U.S.C.A. §§ 3601-3631, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.
Because the constitutionality of a State statute has been challenged, the Attorney General has intervened on appeal on behalf of the New Jersey Division of Mental Health Services. The Attorney General implicitly concedes that the construction which the Law Division has given to N.J.S.A. 30:11B-2 and N.J.S.A. 40:55D-66.2 would invalidate the statutes. To avoid holding them invalid, she urges us to construe their provisions to mean that a person adjudged unfit to be tried on a criminal charge or not *202 guilty by reason of insanity is ineligible to reside in a group home only so long as the person is a "Krol patient," that is, a person who cannot be released without danger to the community or to himself, N.J.S.A. 2C:4-8(b)(3), or who cannot be released without danger except under supervision or under conditions, N.J.S.A. 2C:4-8(b)(2).
N.J.S.A. 2C:4-8 establishes three categories of accuseds who have been acquitted by reason of insanity, and it provides a different disposition for each:
(1) If the court finds that the defendant may be released without danger to the community or himself without supervision, the court shall so release the defendant; or
(2) If the court finds that the defendant may be released without danger to the community or to himself under supervision or under conditions, the court shall so order; or
(3) If the court finds that the defendant cannot be released with or without supervision or conditions without posing a danger to the community or to himself, it shall commit the defendant to a mental health facility approved for this purpose by the Commissioner of Human Services to be treated as a person civilly committed.
[N.J.S.A. 2C:4-8b].
See In re Edward S., 118 N.J. 118, 570 A.2d 917 (1990); State v. Fields, 77 N.J. 282, 390 A.2d 574 (1978); State v. Krol, 68 N.J. 236, 344 A.2d 289 (1975); In re Commitment of A.A., 252 N.J. Super. 170, 599 A.2d 573 (1991).
According to the Attorney General's interpretation of N.J.S.A. 30:11B-2 and N.J.S.A. 40:55D-66.2, a person in the first category, one who has been acquitted by reason of insanity and who can be "released without danger to the community or himself without supervision," would not be ineligible for admission to a community residence. A person in the third category, one who is involuntarily confined by reason of insanity because he or she "cannot be released with or without supervision or conditions without posing a danger to the community or to himself," would be unavailable for admission to a community residence. Persons in the second category, described in N.J.S.A. 2C:4-8(b)(2), who "may be released without danger to the community or to [themselves] [only] under supervision or under conditions," would be barred both *203 under the Attorney General's interpretation of the statues and under the interpretation adopted by the Law Division. Therefore, whether N.J.S.A. 30:11B-2 and N.J.S.A. 40:55D-66.2 are interpreted as the Law Division has interpreted them or as suggested by the Attorney General would make a difference only for persons who, like J.W., have previously been adjudicated unfit to stand trial or not guilty by reason of insanity and who have been discharged from their status as Krol patients, but who would nonetheless either benefit by supervision or would require it as a condition of their release from civil commitment. Under the Attorney General's interpretation of the statutes, J.W. would not be ineligible to live in a community residence.
Under both interpretations of N.J.S.A. 30:11B-2 and N.J.S.A. 40:55D-66.2, some mentally ill persons for whom community residences would be beneficial and psychiatrically suitable would be ineligible for admission without a particularized investigation of their current conditions. For the reasons discussed in this opinion, we have concluded that excluding a mentally ill person from an otherwise suitable community residence without a particularized factual consideration of whether the person is currently dangerous would violate the Fair Housing Act, 42 U.S.C.A. §§ 3601-3631. Consequently, we have not made a choice between the statutory interpretation adopted by the Law Division and that proffered to us by the Attorney General.
The Fair Housing Act, 42 U.S.C.A. §§ 3601-3631, makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of  (A) that buyer or renter...." 42 U.S.C.A. § 3604(f)(1). "Handicap" is defined to include "a physical or mental impairment which substantially limits one or more of such person's major life activities...." 42 U.S.C.A. § 3602(h)(1). A pertinent regulation elaborates on that provision, defining "mental impairment" to include "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities...." 24 C.F.R. *204 § 100.201. These provisions prohibit discrimination in the admission of handicapped persons to community residences. See Marbrunak, Inc. v. City of Stow, Ohio, 974 F.2d 43 (6th Cir.1992) (group home for four retarded women); Association for Advancement of the Mentally Handicapped, Inc. v. City of Elizabeth, 876 F. Supp. 614 (D.N.J. 1994) (community residence for the emotionally disturbed children); Potomac Group Home Corp. v. Montgomery County, Md., 823 F. Supp. 1285 (D.Md. 1993) (group home for disabled elderly); United States v. City of Philadelphia, Pa., 838 F. Supp. 223 (E.D.Pa. 1993) (group home for chronically homeless people who were mentally ill or recovering substance abusers), aff'd, 30 F.3d 1488 (3d Cir.1994); Horizon House Developmental Services, Inc. v. Township of Upper Southampton, 804 F. Supp. 683 (E.D.Pa. 1992) (community residence for people with mental retardation), aff'd, 995 F.2d 217 (3d Cir.1993); Support Ministries for Persons with AIDS, Inc. v. Village of Waterford, N.Y., 808 F. Supp. 120 (N.D.N.Y. 1992) (residence for HIV infected homeless persons); Easter Seal Soc'y of New Jersey, Inc. v. Township of North Bergen, 798 F. Supp. 228 (D.N.J. 1992) (group home for eight mentally ill recovering substance abusers); United States v. Borough of Audubon, 797 F. Supp. 353 (D.N.J. 1991) (community residence for recovering alcohol and drug abusers), aff'd., 968 F.2d 14 (3d Cir.1992).
The Fair Housing Act authorizes exclusion of some disabled persons from housing to which it is applicable:
Nothing in this subsection requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others.
[42 U.S.C.A. § 3604(f)(9)].
See also 24 C.F.R. 100.202(d). The rationale for the provisions of N.J.S.A. 30:11B-2 and N.J.S.A. 40:55D-66.2 which make a person found incompetent to stand trial or not guilty by reason of insanity ineligible to live in a community residence is that those adjudications prove dangerousness. However, the legislative history of the Fair Housing Act strongly supports the conclusion, implied by *205 42 U.S.C.A. § 3604(f)(9), that before a person can be excluded from a dwelling for dangerousness, proof is required that a direct threat would be posed by that particular individual's tenancy. The House Report to the bill which became the Fair Housing Amendments Act states:
The provision adopted by the Committee specifically refers to a direct threat posed by an individual's tenancy. The purpose of this formulation is to require that the landlord or property owner establish that there is a nexus between the fact of the individual's tenancy and the asserted direct threat. Thus, under this provision, a court would need to evaluate whether a direct threat and a significant risk of harm existed in the context of the individual's tenancy. Any claim that an individual's tenancy poses a direct threat and a substantial risk of harm must be established on the basis of a history of overt acts or current conduct. Generalized assumption, subjective fears, and speculation are insufficient to prove the requisite direct threat to others. See Arline, [480 U.S. at 285-287] 107 S.Ct. at 1130-1131 [School Board of Nassau County, Florida v. Arline, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)]; Chalk v. U.S. District Court, 840 F.2d 701 (9th Cir.1988); New York State Association for Retarded Children v. Carey, 612 F.2d 644, 649-650 (2d Cir.1979). In the case of a person with a mental illness, for example, there must be objective evidence from the person's prior behavior that the person has committed overt acts which caused harm or which directly threatened harm.
... If the landlord determines, by objective evidence that is sufficiently recent as to be credible, and not from unsubstantiated inferences, that the applicant will pose a direct threat to the health or safety of others, the landlord may reject the applicant as a tenant. In assessing information, the landlord may not infer that a recent history of a physical or mental illness or disability, or treatment for such illnesses or disabilities, constitutes proof that an applicant will be unable to fulfill his or her tenancy obligations.
[H.R.Rep. No. 711, 100th Cong., 2d Sess. 9 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2181].
School Board of Nassau County, Florida v. Arline, supra, the United States Supreme Court opinion cited in the House Report as exemplary of the rule which the Fair Housing Amendments Act was intended to establish, is instructive for the present case. The appellant before the Court in that case was a public school classroom teacher who had been dismissed from her teaching position because she had active tuberculosis. The Court held that she was a "handicapped individual" within the meaning of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. §§ 701-796. That Act provides that no "otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from *206 ... any program or activity receiving Federal financial assistance...." 29 U.S.C.A. § 794. The Court declared:
The fact that some persons who have contagious diseases may pose a serious health threat to others under certain circumstances does not justify excluding from the coverage of the Act all persons with actual or perceived contagious diseases. Such exclusion would mean that those accused of being contagious would never have the opportunity to have their condition evaluated in light of medical evidence and a determination made as to whether they were "otherwise qualified." Rather, they would be vulnerable to discrimination on the basis of mythology  precisely the type of injury Congress sought to prevent. We conclude that the fact that a person with a record of a physical impairment is also contagious does not suffice to remove that person from coverage under § 504.
[Arline, supra, 480 U.S. at 285-86, 107 S.Ct. at 1129-30, 94 L.Ed.2d at 319-20 (footnotes omitted)].
Of course, the Court recognized, a teacher whose presence in the classroom would pose an appreciable risk of spreading tuberculosis was not qualified to teach, but whether the appellant posed such a risk required a factual inquiry:
To answer this question in most cases, the District Court will need to conduct an individualized inquiry and make appropriate findings of fact. Such an inquiry is essential if § 504 is to achieve its goal of protecting handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such legitimate concerns of grantees as avoiding exposing others to significant health and safety risks.
[Id. at 287, 107 S.Ct. at 1130-31, 94 L.Ed.2d at 320 (footnote omitted)].
Arline holds that proof of a classroom teacher's active tuberculosis is, by itself, insufficient justification for dismissing her. More is required than the fact that she is a member of a class of persons who are potentially dangerous. Particularized proof is needed that this teacher, even with reasonable accommodations for her disability, would be a source of contagion in her specific teaching job. Cf. Marbrunak, Inc. v. City of Stow, Ohio, 974 F.2d 43 (6th Cir.1992) (holding that safety requirements imposed by ordinance only on group homes and which did not relate to the residents' disabilities were illegally discriminatory); Potomac Group Home Corp. v. Montgomery County, Md., 823 F. Supp. 1285 (D.Md. 1993) (same).
Arline's insistence on particularized proofs to justify discrimination against a disabled person, even one who is potentially *207 dangerous, is consistent with the teaching of State v. Krol, supra, the case by which the New Jersey Supreme Court reshaped our procedure for the confinement of the mentally ill. Krol holds that "[t]he fact that defendant is presently suffering from some degree of mental illness and that at some point in the past mental illness caused him to commit a criminal act, while certainly sufficient to give probable cause to inquire into whether he is dangerous, does not, in and of itself, warrant the inference that he presently poses a significant threat of harm, either to himself or to others." Id. at 247, 344 A.2d 289 (footnote omitted). Furthermore, the Court declared:
Accepting arguendo ... that persons acquitted by reason of insanity pose a greater hazard to the public than other mentally ill persons[2] ... the argument does not support a claim that the State should not be required to establish that the particular defendant poses a danger to himself or society. The State does not claim that it would be more burdensome to determine whether persons such as defendant are dangerous than it is generally for persons subject to civil commitment. Its contention that, as a class, persons acquitted by reason of insanity are more likely to be dangerous than other persons, does not rationally establish that any particular individual in the class should be confined even if he is not dangerous.... The decisive consideration where personal liberty is involved is that each individual's fate must be adjudged on the facts of his own case, not on the general characteristics of a "class" to which he may be assigned.
[Id. at 254-55, 344 A.2d 289].
Arline has a clear implication for the present case. It is that 42 U.S.C.A. § 3604(f)(1) forbids excluding a mentally ill person from an appropriate community residence merely because he or she falls within the category of persons acquitted by reason of insanity. That class undoubtedly includes persons who are potentially dangerous. But to warrant the exclusion, there must be particularized proof that an identified person would be potentially dangerous in a specific placement. See Bangerter v. Orem City Corp., 46 F.3d 1491, 1503 (10th Cir.1995) ("Restrictions predicated on public safety cannot be based on blanket stereotypes about the handicapped, but must be tailored to particularized *208 concerns about individual residents."). Consequently, we hold that N.J.S.A. 30:11B-2 and N.J.S.A. 40:55D-66.2 are fatally inconsistent with 42 U.S.C.A. § 3604 because they discriminate against mentally ill persons who have been adjudged incompetent to stand trial or not guilty by reason of insanity by excluding them from admission to community residences without a careful, individualized consideration of the particular facts justifying their exclusion.
A provision of the Federal Fair Housing Act expressly preempts inconsistent state laws:
[A]ny law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid.
[42 U.S.C.A. § 3615].
By virtue of the Supremacy Clause of the United States Constitution, N.J.S.A. 30:11B-2 and N.J.S.A. 40:55D-66.2 are therefore invalid to the extent that they purport to render mentally ill persons who have been found incompetent to stand trial or not guilty by reason of insanity automatically ineligible for residence in community homes for the mentally ill. U.S. Const. art. VI, cl. 2; United States v. City of Black Jack, Missouri, 508 F.2d 1179 (8th Cir.1974), cert. denied, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975); Oxford House, Inc. v. Township of Cherry Hill, 799 F. Supp. 450 (D.N.J. 1992). This conclusion makes it unnecessary for us to determine whether, as asserted by J.W., these sections of the New Jersey statutes are also invalid because they violate the Due Process and Equal Protection Clauses of the United States Constitution. U.S. Const. amend. XIV, § 1; see O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240-41, 624 A.2d 578 (1993) ("[C]ourts should not reach constitutional questions unless necessary to the disposition of the litigation."); Donadio v. Cunningham, 58 N.J. 309, 325-26, 277 A.2d 375 (1971) ("[A] court should not reach and determine a constitutional issue unless absolutely imperative in the disposition of the litigation.").
The order appealed from is therefore reversed. For the reasons stated in this opinion, we hold that N.J.S.A. 30:11B-2 and *209 N.J.S.A. 40:55D-66.2[3] are invalid insofar as they purport to make a person acquitted by reason of insanity ineligible for admission to a community residence without a particularized determination on the basis of all relevant facts, including acquittals by reason of insanity, that the particular committee would be dangerous to himself or herself or to the public if he or she was released to a specific placement.
We remand this matter to the Law Division for further proceedings not inconsistent with this opinion.
NOTES
[1] J.W. was also convicted of a sexual assault in 1984 and sentenced to ten years' imprisonment at Avenel Adult Diagnostic and Treatment Center. This fact, like other facts of his personal history, would be relevant to the decision whether he should be denied release from Ancora because he continues to be a danger to himself or to others. It would also be relevant to a decision about what placement would be suitable for him if he is released. However, his 1984 conviction was not part of the basis for the decision appealed from because the Law Division ruled that his acquittal by reason of insanity itself disqualified him from placement in a community residence.
[2] The Court added a footnote at this point to indicate that "this factual assumption has not gone undisputed in the literature." Id. at 254 n. 4, 344 A.2d 289 (citations omitted).
[3] Our determination of invalidity also applies to N.J.A.C. 10:37A-4.1, which mirrors the exclusionary provisions of the statutes.